## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ALLSTATES REFRACTORY  )
CONTRACTORS, LLC,  )
  )
  )    Case No. 3:21-cv-01864
       Plaintiff,  )
  v.  )    Judge Jack Zouhary
  )
MARTIN WALSH, et al.,  )
  )
       Defendants.  )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS, AND IN THE ALTERNATIVE,
CROSS-MOTION FOR SUMMARY JUDGMENT
<u>AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

i

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ...............................................................................................................3

   I.   Statutory Background. ............................................................................................3

   II.   OSHA's Recent Enforcement Against Allstates. ................................................8

   III.   Procedural Background. .........................................................................................9

ARGUMENT....................................................................................................................9

   I.   The Court Lacks Jurisdiction. ...............................................................................9

       A.   OSH Act Creates a Comprehensive Review Scheme. ...............................11

       B.   OSH Act Established the Exclusive Path For Pre-enforcement Review. ....13

       C.   Allstates Challenges the Validity of OSHA Standards..............................13

       D.   Plaintiff's Claims Are Untimely and in the Wrong Forum.......................18

   II.   Delegated Authority to Issue Safety Standards Is Constitutional........................19

       A.   Congress May Delegate Powers So Long As It Provides an Intelligible
           Principle to Guide Agency Decision-Making. ...........................................21

       B.   The OSH Act Provides an Intelligible Principle. ........................................24

   III.   Doctrine of Constitutional Avoidance...................................................................26

CONCLUSION ................................................................................................................28

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States,*
295 U.S. 495 (1935) ................................................... 20

*Aero. Testing All. v. OSHRC,*
371 F. App'x 568 (6th Cir. 2010) ................................................... 9

*AFL-CIO v. OSHA,*
905 F.2d 1568 (D.C. Cir. 1990) ................................................... 12

*Am. Indus. Health Council v. Marshall,*
494 F. Supp. 941 (S.D. Tex. 1980) ................................................... 11

*Am. Power & Light Co. v. SEC,*
329 U.S. 90 (1946) ................................................... 2

*Am. Textile Mfrs. Inst.*, Inc. *v. Donovan,*
452 U.S. 490 (1981) ................................................... 24, 27

*Blocksom & Co. v. Marshall,*
582 F.2d 1122 (7th Cir. 1978) ................................................... 16, 21

*Collins v. Yellen,*
141 S. Ct. 1761 (2021) ................................................... 16

*Elgin v. Dep't of the Treasury,*
567 U.S. 1 (2012) ................................................... 10, 14, 17, 18

*Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.,*
561 U.S. 477 (2010) ................................................... 15, 16

*Gaspard v. Occupational Safety & Health Admin.,*
No. CV 15-5858, 2016 WL 4161336 (E.D. La. Aug. 5, 2016) ................................................... 11

*Gundy v. United States,*
139 S. Ct. 2116 (2019) ................................................... 20, 22, 23

*In re MCP No. 165,*
--- F.4th ---, No. 21-4027, 2021 WL 5989357 (6th Cir. Dec. 17, 2021) ................................................... 3, 4, 5, 22

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.*,
  671 F.3d 881 (9th Cir. 2011) ........................................ 23

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*,
  448 U.S. 607 (1980) ........................................ 4, 21, 22, 27

*Internat'l Union, United Automobile, Aerospace &
Agricultural Implement Workers of Am. v. OSHA*,
  37 F.3d 665 (D.C. Cir. 1994) ........................................ 27

*Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*,
  393 F. Supp. 2d 1362 (M.D. Ga. 2005) ........................................ 11, 15

*J.W. Hampton, Jr., & Co. v. United States*,
  276 U.S. 394 (1928) ........................................ 2

*Jones v. United States*,
  526 U.S. 227 (1999) ........................................ 26, 28

*JTB Tools & Oilfield Servs., L.L.C. v. United States*,25
  831 F.3d 597 (5th Cir. 2016) ........................................ 15

*Kerpen v. Metro. Wash. Airports Auth.*,
  907 F.3d 152 (4th Cir. 2018) ........................................ 22

*La. Chem. Ass'n v. Bingham*,
  657 F.2d 777 (1981) ........................................ 16

*Mistretta v. United States*,
  488 U.S 361 (1989) ........................................ 20, 23, 24

*N.Y. Cent. Sec. Corp. v. United States*,
  287 U.S. 12 (1932) ........................................ 23

*Nat'l Broad. Co. v. United States*,
  319 U.S. 190 (1943) ........................................ 22, 23

*Nat'l Mar. Safety Ass'n v. OSHA*,
  649 F.3d 743 (D.C. Cir. 2011) ........................................ 3, 24, 25

*Nat'l Res. Def. Council v. Nuclear Regul. Com.*,
  666 F.2d 595 (D.C. Cir. 1981) ........................................ 11

*Noblecraft Indus., Inc. v. Sec'y of Labor*,
  614 F.2d 199 (9th Cir. 1980) ........................................ 18

*Oil, Chem., & Atomic Workers Union v. OSHA,*
    145 F.3d 120 (3d Cir. 1998) ................................................................. 11, 13

*Pan. Refin. Co. v. Ryan,*
    293 F.3d 388 (1935)). ............................................................................ 20

*Reich v. Manganas Painting Co. (In re Estab. Inspection of Manganas Painting Co.),*
    104 F.3d 801 (6th Cir. 1997) ............................................................... 13, 19

*RSR Corp. v. Donovan,*
    747 F.2d 294 (5th Cir. 1984) ............................................................... 11, 13

*Simplex Time Recorder Co. v. Sec'y of Labor,*
    766 F.2d 575 (D.C. Cir. 1985) ............................................................... 18

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................ *passim*

*UAW v. Chao,*
    361 F.3d 249 (3d Cir. 2004) ................................................................. 15

*UAW v. Donovan,*
    756 F.2d 162 (D.C. Cir. 1985) ............................................................... 15

*United States v. Grimaud,*
    220 U.S. 506 (1911) ............................................................................ 22

*Wayman v. Southard,*
    23 U.S. (10 Wheat.) 1 (1825) ............................................................... 22

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001) ....................................................................... *passim*

*Yakus v. United States,*
    321 U.S. 414, 427, 64 S. Ct. 660 (1944) ............................................... 22

**Statutes**

29 U.S.C. § 651 ................................................................... 3, 4, 24, 27

29 U.S.C. § 652 ............................................................................ *passim*

29 U.S.C § 655 ............................................................................ *passim*

29 U.S.C. § 658 ................................................................... 5, 9, 12

29 U.S.C. § 659 ................................................................... 6, 9, 12

29 U.S.C. § 660 ............................................................................ *passim*

42 U.S.C. § 7409 ................................................................................................ 25

## Regulations and other Authorities

29 C.F.R. pt. 1926 ............................................................................................ 19

83 Fed. Reg. 56,198 (Nov. 9, 2018) .................................................................. 19

85 Fed. Reg. 58,393 (Sept. 18, 2020) .............................................................. 1, 4

**INTRODUCTION**

It is hard to overstate the breathtaking scope of the relief sought by Plaintiff Allstates Refractory Contractors, LLC ("Allstates").  Allstates asks this Court to invalidate *every single* occupational safety standard that the Occupational Safety and Health Administration ("OSHA") and the Secretary of the Department of Labor ("Secretary") have ever issued in the 50 years since Congress delegated the authority to issue safety standards in the Occupational Safety and Health Act ("OSH Act" or "Act").  Compl., ECF No. 1, at 31; Pl.'s Memo in support of Summary Judgment, ECF No. 23-1, at 1 ("Pl's Memo") (citing 29 U.S.C. § 655(b)).[1]

Even more remarkable, the basis for this extraordinary ask is the long-dormant constitutional theory of non-delegation, which has only been invoked by the Supreme Court to invalidate agency action *twice* in this Nation's history—both times in 1935.  Allstates argues that this case should be the third.

Plaintiff's claim, however, is procedurally improper.  Allstates filed in the wrong court and long after the statute of limitations has run.  Congress vested the federal courts of appeals with exclusive subject-matter jurisdiction over challenges to the validity of

---

[1] The Secretary has delegated his authority to promulgate health and safety standards to OSHA.  *See, e.g.*, Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 85 Fed. Reg. 58,393, 58,393 (Sept. 18, 2020).

OSHA standards—not district courts.  29 U.S.C. § 655(f) (pre-enforcement); *Id.* § 660(a).

Congress also required any pre-enforcement challenge to the validity of standards to be

filed within 60 days of their promulgation, 29 U.S.C. § 655(f), and any challenge to

enforcement actions to be filed within 60 days of a final agency order, 29 U.S.C. § 660(a).

This is not a federal court of appeals, and the time to challenge the latest safety

standard expired on January 7, 2019.  The fact that Allstates claims to challenge *all* OSHA

safety standards rather than "any particular standard," Compl., at ¶ 10, does not allow

this Court to step beyond its jurisdictional limits.  Indeed, every District Court where a

party tried to challenge the validity of OSHA standards has dismissed the case for lack

of jurisdiction, and every court that has considered (and rejected) the non-delegation

arguments that Plaintiff raises in this case was a federal court of appeals reviewing the

validity of a standard pursuant to 29 U.S.C. § 655(f) or an appeal from an enforcement

action pursuant to 29 U.S.C. § 660.  The Court should dismiss on this basis alone.

In any event, Plaintiff's case fails on the merits.  The OSH Act's delegation of

regulatory authority fits comfortably within the bounds of constitutionally permissible

delegations.  Under the non-delegation doctrine, Congress must provide an "intelligible

principle" directing the agency how to exercise its regulatory authority.  *See J.W. Hampton,*

*Jr. & Co. v. United States,* 276 U.S. 394, 409 (1928).  A delegation satisfies that standard "if

Congress clearly delineates the general policy, the public agency which is to apply it, and

the boundaries of th[e] delegated authority."  *Am. Power & Light Co. v. SEC*, 329 U.S. 90,

2

105 (1946).  Applying that standard, the Court has upheld numerous delegations of authority across a wide range of substantive areas, including laws that carried criminal penalties.  The Supreme Court has found only two statutory delegations to violate this standard, both of which provided no guidance to the Executive.

The constitutional question presented by Allstates is not even particularly close. As one court of appeals explained, "one cannot plausibly argue that 29 U.S.C. § 652(8)'s 'reasonably necessary or appropriate to provide safe or healthful employment and places of employment' standard is not an intelligible principle."  *Nat'l Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 756 (D.C. Cir. 2011).  Every court that has considered the constitutionality of the delegation under the OSH Act to issue safety standards concluded that Congress's delegation is plainly constitutional under the applicable standard.  Plaintiff offers no good reason why this Court should reach a different conclusion.

## BACKGROUND

### I.      Statutory Background.

When Congress passed the Occupational Safety and Health Act in 1970, it declared that "its purpose and policy" was "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions."  29 U.S.C. § 651(b); *see also In re MCP No. 165*, --- F.4th ---, No. 21-4027, 2021 WL 5989357, at *1 (6th Cir. Dec. 17, 2021). Congress "expressly found that 'personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce

3

in terms of lost production, wage loss, medical expenses, and disability compensation payments.'" *Id.* at *1 (quoting 29 U.S.C. § 651(a)).

To that end, Congress authorized the Secretary of Labor "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3). Congress "vested the Secretary with 'broad authority . . . to promulgate different kinds of standards' for health and safety in the workplace." *In re MCP NO. 165*, 2021 WL 5989357, at *1 (quoting *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980)). The Secretary has delegated his authority to promulgate health and safety standards to OSHA. *See, e.g.*, Delegation of Authority and Assignment of Responsibility to the Assistant Secretary for Occupational Safety and Health, 85 Fed. Reg. 58,393, (Sept. 18, 2020).

Congress defines "occupational safety and health standard" as a requirement to adopt practices, means, or methods, "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

Congress directed the Secretary to first "promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees." 29 U.S.C. § 655(a); *see* 29 U.S.C. § 652(9) & (10) (defining national consensus standard and established Federal standard). In the event of a conflict among standards, the Secretary was to "promulgate

4

the standard which assures the greatest protection of the safety or health of the affected employees." 29 U.S.C. § 655(a). And any additional standard generally should not "differ substantially from an existing national consensus standard." *Id.* § 655(b)(8).

"Before going into effect, OSHA's standards must undergo a notice-and-comment period for 30 days, during which time anyone who objects to the standard may request a public hearing." *In re MCP NO. 165*, 2021 WL 5989357, at *2. Within sixty days after the close of the comment period or hearing (if one is held), the Secretary shall issue the rule as proposed (or modified) or make a determination that a rule should not be issued. 29 U.S.C. § 655(b)(4). "The Secretary has set standards that affect workplaces across the country in a wide range of categories, including sanitation, air contaminants, hazardous materials, personal protective equipment, and fire protection." *In re MCP NO. 165*, 2021 WL 5989357, at *2.

An employer, like Plaintiff Allstates, may seek a "variance" from any OSHA standard if it demonstrates "that the conditions, practices, means, methods, operations, or processes used or proposed to be used by an employer will provide employment and places of employment to his employees which are as safe and healthful as those which would prevail if he complied with the standard." 29 U.S.C. § 655(d). Allstates has never sought a variance from any safety standard.

When OSHA becomes aware of a violation of a safety standard, it can issue a citation. 29 U.S.C. § 658(a). After an employer receives the citation, it has fifteen working

days to notify OSHA if it wishes to contest the citation. *Id*. § 659(a). If the employer fails to provide notice within fifteen working days, "the citation and the assessment, as proposed, shall be deemed a final order of the [Occupational Safety and Health Review Commission ("OSHRC")] and not subject to review by any court or agency." *Id*. But if an employer contests the citation within fifteen days, the employer is entitled to an administrative hearing on the issue and appeal to the OSHRC. *Id*. § 659(c).

After the OSHRC issues a final order regarding the citation or enforcement, "[a]ny person adversely affected or aggrieved by [the] order" "may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office, or in the Court of Appeals for the District of Columbia Circuit." 29 U.S.C. § 660(a). A petition challenging an OSHRC enforcement order must be filed in a court of appeals "within sixty days following the issuance of such order." *Id*.

By all accounts, OSHA's standards have significantly increased worker safety. In 1972, the rate of non-fatal injuries and illnesses in private workplaces was 10.9 per 100 full-time equivalent workers (FTE). U.S. Bureau of Labor Statistics, Beyond the Numbers: Nearly 50 years of occupational safety and health data, available at: https://perma.cc/ZQ98-2WGT. In large part due to OSHA's standards and regulatory oversight, that number has fallen to just 2.8 cases per 100 FTE in 2018. *Id*.



Despite this progress, more than 4,500 workers still die every year in work-related injuries at U.S. workplaces.  *Id.* at Chart 3.  In 2018, for example, 11.8% of workplace fatalities were the result of exposure to harmful substances or environments (generally regulated by OSHA's health standards issued pursuant to 29 U.S.C. § 655(d)).  *Id.*  The other 89.2% of 2018 fatalities—totaling more than 4,600 deaths—were the result of other safety issues, which are generally regulated by OSHA's safety standards issued pursuant to 29 U.S.C. § 655.  *Id.*; *see also* https://www.osha.gov/fatalities.  These safety standards are what Plaintiff asks the court to invalidate.

To give an idea of just some of the standards that would be impacted by Plaintiff's request, Allstates specifically identifies OSHA requirements that protect employees, who in the course of their job duties are exposed to fall and falling object hazards, while

working with electrical systems, and dangers from walking-working surfaces like ladders and stairways. *See, e.g.*, Compl., at ¶ 31, 33, 62. Granting Plaintiff's request for an injunction would remove the protections afforded by these OSHA standards and expose workers to life-threatening hazards and seriously harmful injuries. According to OSHA's data on federal OSHA fatality and catastrophe inspections, in Fiscal Year 2018 alone, there were at least 26 fatalities related to Walking-Working Surfaces violations, at least 76 fatalities related to Personal Fall Protection violations, and at least 32 fatality inspections fatalities related to Electrical Systems violations. The standards that Plaintiff seeks to invalidate are critical to protecting worker safety and preventing unnecessary loss of life.

## II.     OSHA's Recent Enforcement Against Allstates.

OSHA cited Allstates in 2019 for violations of safety standards, including a serious violation after a catwalk brace fell and injured a worker below. ECF No. 23-2, ¶ 26. The citation included an initial penalty of $11,934. Allstates Inspection Detail, available at: https://perma.cc/AM3F-NMJT.

After receiving the citation, Allstates had the right to contest the citation to an administrative law judge, appeal to the Occupational Safety and Health Review Commission (OSHRC), and seek review of any decision by OSHRC in an appropriate federal court of appeals. *See Id*. §§ 658(a), 659(a), 659(c), & 660(a). Allstates could have raised any defense, including arguing that the applicable standards were invalid because

they were promulgated pursuant to an unconstitutional delegation of legislative authority, or by establishing the "greater hazard" affirmative defense (a defense that compliance with applicable standards would pose a "greater hazard" to workers than the employer's preferred means of protection, although such a defense usually requires employers to first seek a variance, which Allstates has never done). *See Aero. Testing All. v. OSHRC*, 371 F. App'x 568, 574 (6th Cir. 2020).

Allstates, however, chose not to contest the citation. Allstates did not seek an administrative hearing, did not appeal to OSHRC, and never sought judicial review in an appropriate court of appeals. Instead, Allstates settled the violation for $5,967 on December 20, 2019. Informal Settlement Agreement, ECF No. 32-2, at 16–20.

### III.    Procedural Background.

On September 30, 2021, Allstates filed this current lawsuit, asking the Court to enjoin and hold invalid every single OSHA safety standard. ECF No. 1. Allstates filed a motion for summary judgment on December 3, 2021. ECF No. 23. Defendants file this motion to dismiss, cross-motion for summary judgment, and opposition to Plaintiff's motion for summary judgment.

## <u>ARGUMENT</u>

### I.    The Court Lacks Jurisdiction.

This Court does not have jurisdiction to hear this pre-enforcement challenge to the validity of all OSHA standards because Congress established a comprehensive structure

for pre-enforcement challenges to OSHA standards, vesting the federal courts of appeals with exclusive subject-matter jurisdiction. *See* 29 U.S.C. § 655(f) (pre-enforcement); *cf.* 29 U.S.C. § 660(a) (enforcement). And in any event, this lawsuit is untimely. *Id.*

When Congress establishes a comprehensive scheme for administrative and judicial review—like it did in the OSH Act—courts must assume that the review scheme established by Congress is the exclusive means to challenge applicable regulations. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-08 (1994) (concluding that the Federal Mine Safety and Health Act ("Mine Act"), established the exclusive path for judicial review in federal courts of appeals and thus prohibited pre-enforcement suits in district court).

Under the standards set out in *Thunder Basin*, first a court must assess whether Congress has established a comprehensive scheme for review. Second, the Court must determine if Congress intended that scheme to be the *exclusive* means for judicial review. And finally, the Court must decide whether Plaintiff's "claims are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212; *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 23 (2012).

This is not a close question—every court of appeals to consider the issue has concluded that Congress developed the comprehensive review scheme in 29 U.S.C. § 655(f) as the exclusive mechanism for pre-enforcement review of the validity of OSHA standards. *See, e.g., RSR Corp. v. Donovan,* 747 F.2d 294, 299 (5th Cir. 1984) ("[S]ection 6(f)

10

is the exclusive vehicle for pre-enforcement review of an OSHA standard"); *Oil, Chem., & Atomic Workers Union v. OSHA, 1*45 F.3d 120, 123 (3d Cir. 1998) ("[W]here administrative enabling statutes such as the OSH Act grant exclusive jurisdiction to a particular court to review past actions of an agency, that court necessarily has the exclusive jurisdiction to review inaction as well.").

Every time a plaintiff has challenged the validity of OSHA standards in district court, those courts have found that they lack jurisdiction over those claims. *See, e.g., Gaspard v. Occupational Safety & Health Admin.*, No. CV 15-5858, 2016 WL 4161336, at *2 (E.D. La. Aug. 5, 2016) (dismissing challenge to validity of OSHA standard); *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1385 *reconsideration denied* 2005 WL 1073633 (M.D. Ga., May 4, 2005) (same); *Am. Indus. Health Council v. Marshall*, 494 F. Supp. 941, 945 (S.D. Tex. 1980) (same).

### A.    OSH Act Creates a Comprehensive Review Scheme.

The OSH Act sets out a clear process for pre-enforcement challenges to OSHA standards, which are described in Section 6(f) of the Act, codified at 29 U.S.C. § 655(f). Any "petition challenging the validity" of an OSHA standard must (1) be filed "prior to the sixtieth day after such standard is promulgated," and (2) must be filed "with the United States court of appeals for the circuit wherein [the petitioner] resides or has [their] principal place of business." 29 U.S.C. § 655(f).

11

The 60-day limit in § 655(f) is strictly enforced. "The 60 day period for seeking judicial review . . . is jurisdictional in nature, and may not be enlarged or altered by the courts." *Nat'l Res. Def. Council v. Nuclear Regul. Com.*, 666 F.2d 595, 602 (D.C. Cir. 1981) (construing pre-enforcement review provision of Hobbs Act); *AFL-CIO v. OSHA*, 905 F.2d 1568, 1571 (D.C. Cir. 1990) (petition filed on 60th day was untimely under the OSH Act because statute required filing "prior to the sixtieth day").

For enforcement, OSHA has the authority to issue citations when it finds an employer violated a safety standard. 29 U.S.C. § 658(a). After an employer receives the citation, it has fifteen working days to notify OSHA that it plans to contest the citation. *Id.* § 659(a). If the employer fails to provide notice within fifteen working days, "the citation is final and not subject to review by any court or agency." *Id.* But if an employer timely contests the citation, the employer is entitled to an administrative hearing on the issue and an administrative appeal to the OSHRC. *Id.* § 29.

After the OSHRC issues a final order, "[a]ny person adversely affected or aggrieved by [the] order" "may obtain a review of such order in [an appropriate] United States court of appeals." 29 U.S.C. § 660(a). A petition challenging an OSHRC enforcement order must be filed in a court of appeals "within sixty days following the issuance of such order." *Id.*

12

## B.  OSH Act Established the Exclusive Path For Pre-enforcement Review.

The OSH Act—like the Mine Act in *Thunder Basin*—provides the exclusive path for judicial review.  This case "falls squarely within the holding of *Thunder Basin* because the administrative and judicial review procedures in the two acts [the Mine Safety Act and OSH Act] are nearly identical."  *Reich v. Manganas Painting Co.* (*In re Estab. Inspection of Manganas Painting Co.*), 104 F.3d 801, 803 (6th Cir. 1997)) (noting that the Supreme Court in *Thunder Basin* "held that nearly identical administrative review procedures in the Mine Act revealed a congressional intent to preclude district courts from exercising subject matter jurisdiction over pre-enforcement . . . challenges to the Mine Act").

Every court of appeals to consider the issue has concluded that 29 U.S.C. § 655(f) is the exclusive mechanism for pre-enforcement review of the validity of OSHA standards.  *RSR Corp.*, 747 F.2d at 299; *Oil, Chem., & Atomic Workers Union, 1*45 F.3d at 123.

The OSH Act legislative history is also clear on this point.  *See*, S. Rep. No. 91-1282, 91st Cong., 2d Sess., 8, *reprinted in* (1970) U.S. Code Cong. & Ad. News, pp. 5177, 5184 (noting that "[section 655(f)] would be the exclusive method for obtaining pre-enforcement judicial review of a standard").

## C.  Allstates Challenges the Validity of OSHA Standards.

Since there is no question that the OSH Act set out the exclusive path for judicial review for pre-enforcement review challenging the validity of OSHA safety standards,

13

the only question for this Court to answer is whether Allstates' claim falls within the scope of the exclusive review scheme in the OSH Act.  The factors the Supreme Court considered in *Thunder Basin* and *Elgin*—(1) whether the claim is wholly collateral to the statutory review provisions; (2) whether the claims are beyond the expertise of the agency; and (3) whether a decision that Plaintiff's claims fall within the statute's exclusive review provisions would allow for judicial review of those types of claims—all support the conclusion that Allstates' pre-enforcement challenge to the validity of OSHA's safety standards falls within the comprehensive review structure set by Congress.

*Allstates' Claim Is Not Wholly Collateral.*  Plaintiff's claim is not "wholly collateral" to the OSH Act's process for challenging the validity of standards so as to avoid *Thunder Bay/Elgin* preclusion.  This case challenges the constitutional validity of OSHA safety standards promulgated pursuant to 29 U.S.C. § 655—this challenge falls squarely within the provisions governing cases "challenging the validity of [§ 655] standard[s]." 29 U.S.C. § 655(f). The fact that Allstates challenges *all* standards rather than "any particular standard," Compl., at ¶ 10, is of no consequence.

The constitutional theory that forms the basis of Plaintiff's challenges does not make the claim "collateral."  Just like the Civil Service Reform Act that the Supreme Court discussed in *Elgin*, "[n]othing in the [OSH Act's] text suggests that its exclusive review scheme is inapplicable simply because a [company] challenges a covered action on the ground that the statute authorizing that action is unconstitutional." 567 U.S. at 13. When

14

a lawsuit challenges the "validity" of OSHA standards on *any* basis, even under the Constitution, that suit must comply with the timing and jurisdiction requirements of § 655(f).  *See Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d at 1385 (finding constitutional and non-OSHA statutory claims were challenges "attacking the validity of the Rule itself" so § 655(f)'s 60-day time limit and jurisdictional limits applied).[2]

Nor does the stand-alone constitutional claim advanced by Plaintiff make its challenge "collateral."  Plaintiff claims to bring a stand-alone, non-delegation claim against existing OSHA standards, but provide no reason why that claim would fall outside the pre-enforcement review structure of § 655(f) or enforcement limitations of § 660(a).  Rather, Plaintiff cites to *Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.*, 561 U.S. 477 (2010), for the general proposition that it can bring a stand-alone separation of powers claim.  While *Free Enterprise* "indicated that individuals *may* have an implied private right of action under the Constitution to seek equitable relief," *Collins v. Yellen*, 141 S. Ct. 1761, 1790 n.1 (2021) (Thomas, J., concurring) (emphasis added); *Free Enter. Fund*, 561 U.S. at 491 n.2, the Court still used the *Thunder Basin* framework to determine whether a claim

---

[2] Courts have also held that any challenge to OSHA's decision not to publish a standard must also follow the exclusive review scheme set out in *Id.* § 655(f).  *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 600 (5th Cir. 2016); *UAW v. Chao*, 361 F.3d 249, 251 (3d Cir. 2004); *UAW v. Donovan*, 756 F.2d 162, 163 (D.C. Cir. 1985).

for equitable relief must be raised in the comprehensive review procedure established by Congress, *Free Enter. Fund*, 561 U.S. at 489. In other words, Plaintiff's stand-alone constitutional claim—to the extent it is a valid cause of action at all—must still conform with the requirements of the OSH Act.[3] *See Blocksom & Co. v. Marshall, 582* F.2d 1122, 1124 (7th Cir. 1978) (a party cannot bring "independent action" in district court asserting a "generalized interest in the Act's nonenforcement").

District Courts addressing the question of whether they have jurisdiction over a challenge to OSHA action sometimes analyze whether the lawsuit challenges a "standard," which must be filed in a court of appeals consistent with § 655(f) or § 660, or a wholly collateral "regulation," which may be filed in a district court pursuant to the Administrative Procedure Act. *La. Chem. Ass'n v. Bingham*, 657 F.2d 777, 785 (1981) ("Congress fashioned two entirely different modes of legal requirements in this statute"). There is no question here that Plaintiff challenges workplace standards issued under 29

---

[3] The Supreme Court in *Free Enterprise* concluded that *Thunder Basin* did not apply to petitioner's Appointments Clause challenge to the PCAOB because "a finding of preclusion could foreclose all meaningful judicial review," and the petitioner challenged the Board's existence, not "any of its auditing standards." 561 U.S. at 490–91. By contrast, compliance with the comprehensive structure of the OSH Act does not "foreclose all meaningful judicial review" because pre-enforcement challenges can be filed directly in federal courts of appeals in accordance with § 655(f) and any party can raise the validity of any standard in an enforcement proceeding that allows for ultimate review by a federal court of appeals. And while the petitioners in *Free Enterprise* challenged the existence of the Board itself, not its standards, Allstates here challenges OSHA's standards, not the existence of OSHA itself.

16

U.S.C. § 655(b)—not some general agency regulation—so district courts have no jurisdiction.  *See generally* Compl. ECF No. 1 Prayer for Relief; Pl.'s Memo.

*Issues Are Not Beyond the Expertise of Agency.*  When determining whether the claim belongs within the exclusive review regime established by Congress, courts sometimes consider whether the claim is beyond the expertise of the agency.  But this factor does not apply here because pre-enforcement challenges must be brought in a federal court of appeals in the first instance—not before the agency—and federal courts are certainly capable of adjudicating this type of claim.  29 U.S.C. § 655(f).

Even considering this factor as part of a potential enforcement action, there are "many threshold questions that may accompany a constitutional claim and to which [OSHA] can apply its expertise."  *Elgin*, 567 U.S. at 22.  For example, "the challenged statute may be one that [OSHA] regularly construes, and its statutory interpretation could alleviate constitutional concerns."  *Id.* at 23.  Or an enforcement action may "involve other statutory or constitutional claims that [OSHA] routinely considers, in addition to a constitutional challenge to a federal statute."  *Id.*  If OSHA's "expertise can otherwise be 'brought to bear'" on enforcement actions "that challenge the constitutionality of a statute," there is "no reason to conclude that Congress intended to exempt such claims from exclusive review."  *Id.*

*Avenues for Judicial Review.*  Requiring parties to conform with the exclusive scheme in the OSH Act does not preclude all avenues for judicial review.  As the Supreme Court

explained in *Elgin,* an Act that "merely directs that judicial review shall occur in [certain forums]" provides avenues for judicial review.  *Elgin,* 567 U.S. at 10.  Pre-enforcement challenges to the validity of OSHA standards are directed to the court of appeals where the petitioner resides.  29 U.S.C. § 655(f).  And of course, parties remain free to challenge the validity of OSHA safety standards in "enforcement proceedings before the Commission" and subsequent judicial review in a United States court of appeals.  *Simplex Time Recorder Co. v. Sec'y of Labor,* 766 F.2d 575, 583 n.2 (D.C. Cir. 1985); *Noblecraft Indus., Inc. v. Sec'y of Labor,* 614 F.2d 199, 202 (9th Cir. 1980).  In fact, Allstates had the opportunity to raise the very claim it presses here—that safety standards are unconstitutional—when it was cited for a violation in 2019.  But Allstates decided to settle with OSHA instead.

Because the OSH Act provides a comprehensive and exclusive scheme for reviewing challenges to the validity of OSHA standards, and because Plaintiff's claims are the precise type of claims contemplated by the Act's review provisions, Plaintiff's claims are governed by the jurisdictional limitations in §§ 655(f) and 660(a).

### D.    Plaintiff's Claims Are Untimely and in the Wrong Forum.

Since Allstates' suit falls within the scope of the OSH Act's comprehensive agency and judicial scheme, its case is untimely and filed in the wrong court.

This case was not filed within the applicable 60-day limit. *See* 29 U.S.C. § 655(f); 29 U.S.C. § 660(a).[4]  The latest enacted safety standard that imposed new requirements on employers was promulgated on November 9, 2018, and became effective December 10, 2018.  Cranes and Derricks in Construction, 83 Fed. Reg. 56,198 (Nov. 9, 2018); 29 C.F.R. pt. 1926.  Any challenge to the validity of that standard needed to be filed by January 7, 2019.  This suit was filed on September 30, 2021, more than a year-and-a-half after the 60-day limit expired.

This lawsuit was also filed in the wrong court, as this Court is obviously not a United States court of appeals.  For all of these reasons, this Court lacks jurisdiction over Plaintiff's claims.

## II.      Delegated Authority to Issue Safety Standards Is Constitutional.

Even if this Court has jurisdiction, Plaintiff's case fails on the merits.  Plaintiff argues that the OSH Act provision directing the Secretary of Labor to set standards that are "reasonably necessary or appropriate to provide safe or healthful employment and

---

[4] Although § 660(a) provides a mechanism for challenging the validity of an OSHA standard in an enforcement proceeding, that provision is inapplicable here because this case is not an enforcement action.  But even if that provision applied, this court lacks jurisdiction to consider Plaintiff's claims because § 660(a) assigns exclusive authority to adjudicate initial OSHA enforcement proceedings in the OSHRC, and review of OSHRC final orders in the United States courts of appeals.  *See Manganas*, 104 F.3d at 803 (concluding that United States district courts lack jurisdiction over claims properly raised in OSHA enforcement proceedings).  *Id.*

19

places of employment," 29 U.S.C. § 652(8), is an unconstitutional delegation of authority. That argument ignores the structure, history, and context of the delegation. And even looking at just the definition devoid of context, there is still a sufficient intelligible principle.

Congress has delegated authority to the executive branch since the dawn of our nation, and the Supreme Court has only twice held a statute invalid on non-delegation grounds. One of those provisions gave "literally no guidance for the exercise of discretion, and the other . . . conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 474 (2001) (citing *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935); *Pan. Refin. Co. v. Ryan,* 293 U.S. 388 (1935)). In each case, "'Congress had failed to articulate *any* policy or standard' to confine discretion." *Gundy v. United States,* 139 S. 2116, 2129 (2019) (plurality op.) (quoting *Mistretta v. U.S.,* 488 U.S. 361, 373, n. 7 (1989)).

Plaintiff nonetheless argues that the agency's authority is an unconstitutional delegation. But under long-standing precedent, the delegation at issue satisfies the applicable standard and falls comfortably within the scope of delegations the Supreme Court has previously upheld.

Every court that has considered the constitutionality of the delegation of authority to the Secretary and OSHA to promulgate safety standards has concluded that the

delegation in the OSH Act was constitutional. "What is perfectly clear is that the Congress has chosen a policy and announced general standards which guide the Secretary in establishing specific standards to assure the safest and healthiest possible working environments, and which enable the courts and the public to test the Secretary's faithful performance of that command. Nothing more is required." *Blocksom & Co. v. Marshall*, 582 F.2d at 1126; *see e.g.*, *Nat'l Mar. Safety Ass'n.*, 649 F.3d at 755 (rejecting a non-delegation challenge to § 655(b)); *Internat'l Union, United Automobile, Aerospace & Agricultural Implement Workers of Am. v. OSHA*, 37 F.3d 665, 668 (D.C. Cir. 1994) (same); *cf. Indus. Union Dep't.*, 448 U.S. at 646 (finding authority to promulgate health standards was not an unconstitutional delegation); *Nat'l Mar. Safety Ass'n*, 649 F.3d at 756.

Under the applicable standards and binding precedents, the OSH Act's delegation is constitutional.

### A. Congress May Delegate Powers So Long As It Provides an Intelligible Principle to Guide Agency Decision-Making.

There is no dispute that Congress may lawfully delegate decision-making authority so long as it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (citation omitted). Indeed, that principle has been recognized "[f]rom the beginning of the government." *United States v. Grimaud*, 220 U.S. 506, 517 (1911); *see Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825) (Marshall, C.J.) ("Congress may

certainly delegate to others[] powers which the legislature may rightfully exercise itself.").

"An 'intelligible principle' need not be exactingly precise to satisfy the requirements of the non-delegation principle." *Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152, 161 (4th Cir. 2018). "[A] delegation is permissible if Congress has made clear to the delegee 'the general policy' he must pursue and the 'boundaries of his authority.'" *Gundy v. United States*, 139 S. Ct., at 2129 (plurality opinion) (cleaned up).

"The Supreme Court has long recognized the power of Congress to delegate broad swaths of authority to executive agencies under this standard and has ultimately concluded that extremely broad standards will pass review." *In re MCP NO. 165*, 2021 WL 5989357 at *18. "How broad? Delegations to regulate in the 'public interest,' to set 'fair and equitable prices,' and to issue air quality standards 'requisite to protect the public health.'" *Id.* (quoting *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216, 63 S. Ct. 997, 87 L. Ed. 1344 (1943); *Whitman*, 531 U.S. at 457, 472; *Yakus v. United States*, 321 U.S. 414, 427, 64 S. Ct. 660 (1944); *see Indus. Union Dep't*, 448 U.S. at 607, 646 (upholding delegation to determine what constituted a "safe" place of employment); *Gundy*, 139 S. Ct. at 2129 (noting that the Supreme Court has, on multiple occasions, "approved delegations to various agencies to regulate in the 'public interest'" (citing *Nat'l Broad. Co.*, 319 U.S. at 190, and *N.Y. Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24 (1932))); *id.*, at 2130–31 (Alito, J., concurring) ("[S]ince 1935, the Court has uniformly rejected

22

nondelegation arguments and has upheld provisions that authorized agencies to adopt important rules pursuant to extraordinarily capacious standards.").

The intelligible-principle standard is so deferential that the Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Whitman*, 531 U.S. at 457, 474–75 (quoting *Mistretta*, 488 U.S at 416 (Scalia, J., dissenting)). The two instances where the Supreme Court has invoked the non-delegation to strike down a law both occurred in 1935—and only because "Congress had failed to articulate *any* policy or standard" to confine discretion. *Gundy*, 139 S. Ct. at 2129. Over the last eighty years, the Court "has countenanced as intelligible seemingly vague principles in statutory text such as whether something would 'unduly or unnecessarily complicate,' … be 'generally fair and equitable,' in the 'public interest,' … [or] authoriz[es] the recovery of excessive profits." *In re Nat'l Sec. Agency Telecomms. Recs. Litig., 671 F.3d* 881, 896 (9th Cir. 2011) (citing multiple cases).

The intelligible principle does not demand mathematical precision. As the Supreme Court explained, "even in sweeping regulatory schemes we have never demanded, as the Court of Appeals did here, that statutes provide a determinate criterion for saying how much of the regulated harm is too much." *Whitman*, 531 U.S. at 475.

### B.    The OSH Act Provides an Intelligible Principle.

In light of this longstanding precedent and deferential standard, the statute at issue here reflects an intelligible principle that falls comfortably within permissible bounds. The OSH Act lays out the "general policy" and "the public agency which is to apply it." *Mistretta*, 488 U.S. at 372. For a policy, Congress found that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments.'" 29 U.S.C. § 651(a). To implement that policy, Congress authorized the Secretary of Labor "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3). The standards must be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

Congress directed the Secretary to first "promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees." 29 U.S.C. § 655(a); *see* 29 U.S.C. § 652(9) & (10) (defining national consensus standard and established Federal standard). In the event of a conflict among standards, the Secretary was to "promulgate the standard which assures the greatest protection of the safety or health of the affected

24

employees." 29 U.S.C. §655(a).  And any additional standard generally should not "differ substantially from an existing national consensus standard."  29 U.S.C. §655(b)(8).

For legislative history, the Supreme Court explained that "any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act."  *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513 (1981).

These definitions and specific Congressional guidance, along with the Act's structure, history, and purpose constitute sufficient Congressional direction to OSHA for promulgating safety standards, and compares favorably to other congressional delegations that have been sustained against challenges under the nondelegation doctrine.  *Whitman*, 531 U.S. at 474–75 (listing cases).

Even setting aside the Act's structure, history, purpose, and Congressional guidance regarding national consensus standards, and focusing (as Plaintiff does) only on the phrase "reasonably necessary or appropriate to provide safe or healthful employment and places of employment," that phrase—even standing alone—plainly provides an intelligible principle.

Despite citing the Supreme Court's *Whitman* opinion *eight times* in its brief, Allstates never tries to square its argument with that unanimous decision that the delegation to set air quality standards "requisite to protect the public health," 42 U.S.C. § 7409(b)(1), was enough to pass constitutional muster.  *Whitman*, 531 U.S. at 476.  As the

25

*Whitman* Court explained, a standard based on the word "requisite"—"not lower or higher than is necessary—to protect the public health with an adequate margin of safety, fits comfortably within the scope of discretion permitted by our precedent." *Id.* That conclusion was unanimous. *Id.* at 486 (Thomas, J., concurring) (agreeing that the statute provided "no less an 'intelligible principle' than a host of other directives that we have approved.; *id.* at 489–91 (Stevens, J., concurring) ("wholeheartedly endors[ing] the Court's result and endors[ing] its explanation of its reasons" although explaining he would emphasize that rulemaking is "legislative"). There is no discernible difference between the term "requisite"—which the Supreme Court unanimously held was constitutionally sufficient—and the words at issue here: "reasonably necessary or appropriate."

In short, as the D.C. Circuit bluntly concluded that "one cannot plausibly argue that 29 U.S.C. § 652(8)'s 'reasonably necessary or appropriate to provide safe or healthful employment and places of employment' standard is not an intelligible principle."

### III.    Doctrine of Constitutional Avoidance.

Even if this Court thinks the non-delegation question is a close one, the appropriate path would be to interpret the OSH Act in such a way that would avoid non-delegation issues. *See Jones v. United States*, 526 U.S. 227, 239 (1999). OSHA has a long-standing interpretation of the statute that guides its adoption of safety standards, which include findings that the standard would materially reduce a significant risk of serious

physical harm, be economically and technologically feasible, and provide a high degree of protection, *i.e.*, one that approaches the limits of feasibility.  58 Fed. Reg. 16612, 16614-16; *Internat'l Union, United Automobile, Aerospace & Agricultural Implement Workers of Am.*, 37 F.3d at 668.  These requirements are grounded in the definition of "occupational safety and health standard" and the purpose of the statute "to assure, so far as possible, that every working man and woman . . . safe and healthful working conditions."  §§ 651(b), 652(8); *Indus. Union Dep't,*. 448 U.S. at 642; *Am. Textile Mfrs*, 452 U.S. at 513 n.31.

Contrary to Allstates' argument, these requirements are not "strained readings" of the statute.  And even if the Court agrees with Allstates that § 655(b) *could* be interpreted so broadly as to violate non-delegation principles, the Court is not required to adopt such an overbroad interpretation of the Act and strike down *all* safety standards as unconstitutional.  Rather, because the statute is open to a reasonable interpretation with adequate limiting principles, the Court should adopt the interpretation that avoids implicating constitutional issues, as every other court of appeals to consider the issue has done.

Under the well-settled doctrine of constitutional avoidance, if the Court believes that the delegation in the OSH Act to issue safety standards is open to various interpretations and that *some* possible interpretations might be so broad as to implicate the non-delegation doctrine but others would not, then the Court should rely on the doctrine of constitutional avoidance and adopt an interpretation that does not raise any

constitutional questions. "'[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'" *Jones*, 526 U.S. at 239 (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)).

As the OSH Act permits an interpretation that would not violate the non-delegation doctrine—as adopted by the D.C. and Seventh Circuits, and described by the Supreme Court—this Court should likewise avoid adopting an unconstitutional interpretation of the statute.

## <u>CONCLUSION</u>

The Court should grant Defendants' motion to dismiss, or in the alternative, grant Defendants' cross-motion for summary judgment and deny Allstates' motion for summary judgment.


Dated:  January 14, 2021     Respectfully submitted,

            BRIAN M. BOYNTON
            Acting Assistant Attorney General

            BRAD P. ROSENBERG
            Assistant Director

            */s/ Zachary A. Avallone*
            ZACHARY A. AVALLONE
            Trial Attorneys
            U.S. Department of Justice
            Civil Division, Federal Programs Branch
            1100 L Street NW

Washington,  D.C. 20005
(202) 514-2705
Zachary.a.avallone@usdoj.gov

*Counsel for Defendants*