# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |
|---|---|
| ALLSTATES REFRACTORY CONTRACTORS, LLC, | |
| *Plaintiff,* | No. 3:21-cv-01864-JZ |
| *v.* | ORAL ARGUMENT REQUESTED |
| MARTIN J. WALSH, in his official capacity as Secretary of Labor, *et al.*, | |
| *Defendants.* | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY <u>JUDGMENT AND OPPOSITION TO MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.  Congress's Delegation of Authority Here Violates The Constitution ................. 2

    A.  The Operative Text Lacks An Intelligible Principle ................................. 2

    B.  Statutory Context Does Not Supply An Intelligible Principle.................... 4

    C.  Constitutional Avoidance Is Not A Viable Option..................................... 6

    D.  The Court Should Enter Declaratory and Injunctive Relief ...................... 8

II.  This Court's Jurisdiction Is Not In Doubt .......................................................... 8

    A.  Allstates Is Not Challenging Any OSHA "Standard"................................. 9

    B.  Section 655(f) Does Not Implicitly Oust The Court's Jurisdiction ........... 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.L.A. Schecter Poultry Corp. v. United States,*
295 U.S. 495 (1935) ............................................................................. 1

*Am. Textile Mfrs. Inst., Inc. v. Donovan,*
452 U.S. 490 (1981) ............................................................................. 6

*Am. Trucking Ass'ns v. EPA,*
175 F.3d 1027 (D.C. Cir. 1999) .......................................................... 3

*Cochran v. SEC,*
20 F.4th 194 (5th Cir. 2021) (en banc) ............................................ 15

*Elgin v. Dep't of Treasury,*
567 U.S. 1 (2012) .............................................................. 11, 12, 13, 15

*Epic Sys. Corp. v. Lewis,*
138 S. Ct. 1612 (2018) .................................................................. 5, 15

*Free Enter. Fund v. PCAOB,*
537 F.3d 667 (D.C. Cir. 2008) .......................................................... 10

*Free Enter. Fund v. PCAOB,*
561 U.S. 477 (2010) ....................................................................*passim*

*Gundy v. United States,*
139 S. Ct. 2116 (2019) .................................................................... 3, 4

*Int'l Union v. OSHA,*
938 F.2d 1310 (D.C. Cir. 1991) .................................................. 3, 4, 6

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) .......................................................................... 7

*Jones Bros., Inc. v. Sec'y of Labor,*
898 F.3d 669 (6th Cir. 2018) ............................................... 10, 11, 12

*Lichter v. United States,*
334 U.S. 742 (1948) ............................................................................. 4

*NBC v. United States,*
319 U.S. 190 (1943) ............................................................................. 3

*NFIB v. DOL,*
142 S. Ct. 661 (2022) .......................................................................... 7

*Ohio Coal Ass'n v. Perez,*
192 F. Supp. 3d 882 (S.D. Ohio 2016) ............................................. 15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Time Warner Ent. Co. v. FCC,*
  93 F.3d 957 (D.C. Cir. 1996) .............................................................. 10

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ...................................................................*passim*

*United States v. Nichols,*
  784 F.3d 666 (10th Cir. 2015) .............................................................. 4

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ...................................................................*passim*

*Yakus v. United States,*
  321 U.S. 414 (1944) .............................................................................. 4

STATUTES

15 U.S.C. § 78y ................................................................................... 9

28 U.S.C. § 1331 ...................................................................*passim*

29 U.S.C. § 655 .....................................................................*passim*

29 U.S.C. § 660 ................................................................................. 13

iii

## INTRODUCTION

The government's brief, Dkt. 24-1 (Opp.), has remarkably little to say about the most sweeping delegation of legislative power since the one rejected in *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495 (1935). Rather than engage with most of the arguments in Allstates' opening brief, Dkt. 23-1 (Mot.), the government insists that the uniquely broad delegation of legislative power here is no different than others the Supreme Court has upheld. But as the government acknowledged years ago: "The phrase 'reasonably necessary or appropriate' is not a limitation on the Secretary's powers[.]" *Id.* at 17 (citation omitted). Indeed, the government betrays the weakness of its position by urging the Court to resort to "constitutional avoidance" and adopt OSHA's convenient rewriting of the Act. The government is right that the Act needs saving. But it is Congress, not the judiciary, that must rewrite it.

Rather than seriously grapple with the merits, the government spends most of its time claiming that Congress stripped this Court of jurisdiction under 28 U.S.C. § 1331 merely by providing that the courts of appeals "may" review challenges to OSHA "standard[s]." 29 U.S.C. § 655(f). But Allstates is challenging the facial constitutionality of OSHA's *enabling statute*, not its *standards*, rendering the government's jurisdictional objection beside the point. Indeed, the Supreme Court's decision in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), confirms that § 655(f) does not strip this Court of federal-question jurisdiction to consider a facial challenge to the statute's constitutionality under the separation of powers.

## ARGUMENT

## I.    Congress's Delegation of Authority Here Violates The Constitution.

The government has precious little to say in defense of the nondelegation problem Allstates extensively briefed. As explained, the fatal flaw in the OSH Act is that the phrase "reasonably necessary or appropriate" is a standardless delegation of legislative power that provides no intelligible principle to guide OSHA's discretion in enacting safety standards under 29 U.S.C. § 655(b). If such a vacuous phrase could qualify as an intelligible principle, then that test would need to be reconsidered. Mot. 10-26. In response, the government does not even mention, let alone dispute, the bulk of Allstates' arguments. Instead, it offers three defenses of the Act, all of which fail.

### A.    The Operative Text Lacks An Intelligible Principle.

First, the government asserts that the phrase "reasonably necessary or appropriate" "*standing alone* … plainly provides an intelligible principle." Opp. 25 (emphasis added). In doing so, it does not try to divine such a principle from the ordinary meaning of the statutory text—and Allstates already demonstrated that this would have been an exercise in futility. Mot. 14-18. Rather, the government contends that"[t]here is no discernible difference" between this case and *Whitman v. American Trucking Associations*, 531 U.S. 457 (2001), which upheld a statute directing the EPA to "set air quality standards 'requisite to protect the public health.'" Opp. 25-26. But unlike here, the provision in *Whitman* involved standards that were actually "'requisite'—that is, not lower or higher than is necessary—to protect the public health," and thus "resemble[d]" the more detailed delegation to OSHA to write *health*

standards, which is not challenged here. 531 U.S. at 472-73, 475-76; *see* Mot. 5-6. The EPA did not have "authority to do whatever is '*reasonably* necessary or appropriate' to protect public health." *Am. Trucking Ass'ns v. EPA*, 175 F.3d 1027, 1058 (D.C. Cir. 1999) (Tatel, J., dissenting), *aff'd in part, rev'd in part sub nom. Whitman*, 531 U.S. 457. Thus, the provision in *Whitman* required standards to be set "at levels *necessary* to protect the public health, whether 'reasonable' or not, whether 'appropriate' or not." *Id.* (distinguishing the delegation here). That is nothing like the sweeping provision here, which authorizes OSHA to create any safety standard it deems "appropriate."

Nor do any other Supreme Court decisions cited by the government help its case. For example, the government observes that *NBC v. United States*, 319 U.S. 190 (1943), upheld a statute authorizing the Executive Branch to grant licenses for scarce public radio spectrum in the "public interest." Opp. 22-23. But granting licenses to use public resources does not raise the same concerns about delegating legislative power because it does not involve prescribing "generally applicable rules of conduct governing future actions by private persons." *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J., dissenting). Moreover, *NBC* involved a narrow "delegation[] governing a single industry," whereas the delegation here "encompass[es] all American enterprise." *Int'l Union v. OSHA*, 938 F.2d 1310, 1317 (D.C. Cir. 1991) (*Int'l Union I*); *see* Mot. 13-14. Additionally, the Court in *NBC* concluded that the statute limited the phrase "public interest" to require the Executive Branch to wield its "discretion in ways that 'encourage the larger and more effective use of radio,'"

3

whereas "no comparable guidance exists here." *United States v. Nichols*, 784 F.3d 666, 675 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc).

Similarly, the government emphasizes that *Yakus v. United States*, 321 U.S. 414 (1944), upheld an agency's authority to set "fair and equitable" prices. Opp. 21, 23. But *Yakus* cannot render "the delegation claimed by OSHA defensible" because that case involved a delegation "of 'war' powers." *Int'l Union I*, 938 F.2d at 1318. Because the delegation "at least arguably[] implicated the president's inherent Article II authority" to take wartime measures even without legislative authorization, it was not necessarily an improper delegation. *Gundy*, 139 S. Ct. at 2137, 2140 (Gorsuch, J., dissenting); *see Lichter v. United States*, 334 U.S. 742, 778-79 (1948) (noting that the delegation of "constitutional war powers" permits "the exercise of broad discretion"). And again, the Executive Branch's discretion was far more confined than it is here. For example, the statute directed the Executive Branch "to give due consideration, so far as practicable, to prevailing prices during the designated base period"—two weeks in October 1941—"with prescribed administrative adjustments to compensate for enumerated disturbing factors affecting prices." *Yakus*, 321 U.S. at 423; *see id.* at 421.

## B. Statutory Context Does Not Supply An Intelligible Principle.

With the text against it, the government falls back on statutory context to supply an intelligible principle, but to no avail. Opp. 24-25. For example, it observes that § 655(a) directed OSHA to adopt certain pre-existing "'national consensus standard[s]'" and "'established Federal standard[s]'" within two years of the Act's

4

effective date, and that if any of those pre-existing standards conflicted, "the Secretary was to 'promulgate the standard which assures the greatest protection of the safety or health of the affected employees.'" *Id*. But Allstates has not challenged "OSHA's authority to adopt national consensus standards or emergency temporary standards, both of which allow for less discretion in the rulemaking process," so this *separate* delegation is immaterial here. Mot. 5.

The government tries to backdoor § 655(a) into this case by contending that under § 655(b)(8), "any *additional* standard generally should not 'differ substantially from an existing national consensus standard.'" Opp. 25 (emphasis added). That is misleading. Read in full, § 655(b)(8) directs that "[w]henever a rule promulgated by the Secretary differs substantially from an existing national consensus standard, the Secretary shall, at the same time, publish in the Federal Register a statement of the reasons why the rule as adopted will better effectuate the purposes of this chapter than the national consensus standard." Nowhere does the provision say a § 655(b) standard "should not 'differ substantially'" from national consensus standards. Opp. 25. To the contrary, the provision underscores that OSHA has *free rein to differ substantially* from any national consensus standards, so long as it *explains* why it is doing so. And that is no *substantive* limit on OSHA's discretion at all.

The government next suggests that the Act's "legislative history" supplies an intelligible principle. Opp. 25. "But legislative history is not the law," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018), and the government cites nothing more than dicta in a footnote stating that "as the legislative history makes plain, any standard

5

that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act," *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513 n.31 (1981). In all events, as the D.C. Circuit has noted, even if the Act bars OSHA from adopting *infeasible* rules, that would not solve the nondelegation problem because it would still give the agency standardless discretion to choose from the virtually infinite universe of "feasible" rules that it might deem appropriate to impose on employers. *Int'l Union I*, 938 F.2d at 1317; *see* Mot. 19-20.

## C. Constitutional Avoidance Is Not A Viable Option.

Next, the government urges this Court to apply the canon of constitutional avoidance "to interpret" the Act to "avoid non-delegation issues." Opp. 26. And, perhaps too conveniently, the government notes, "OSHA has a long-standing interpretation of the statute" that can do the job. *Id.* The government again ignores Allstates' arguments, which explained why this theory does not work. Mot. 19-24. To recap: *Whitman* held that an agency cannot "cure an unconstitutionally standardless delegation of power by declining to exercise some of that power" via interpretation. 531 U.S. at 473. In that situation, "[t]he very choice of which portion of the power to exercise … would *itself* be an exercise of the forbidden legislative authority." *Id.* And that problem exists whether an *agency* or a *court* is choosing which portion of the delegated power will be exercised. Either way, someone *other than Congress* is impermissibly exercising legislative power.

In all events, the government is not asking the Court to adopt a "fairly possible" reading of the Act—a necessary condition for deploying the avoidance canon.

6

*Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). It is instead asking the Court to exercise some degree of legislative power by rewriting the Act to reflect OSHA's preferred version in response to litigation. Based on nothing more than the four words "reasonably necessary or appropriate"—and legislative "purpose"—the government claims the Act requires any safety standard to "materially reduce a significant risk of serious physical harm, be economically and technologically feasible, and provide a high degree of protection, *i.e.*, one that approaches the limits of feasibility." Opp. 26-27. But as explained, "[w]herever that standard comes from, it is not the … Act" itself. Mot. 21. Other than denying in conclusory terms that OSHA's position is a "'strained reading[]' of the statute," the government has nothing to say in response. Opp. 27.

Indeed, the government itself does not even have a coherent theory for what "reasonably necessary or appropriate" means. On the one hand, it argues (incorrectly) that this phrase is the same as "requisite," which *Whitman* held "unambiguously *bars* cost considerations." 531 U.S. at 471 (emphasis added); *see* Opp. 25-26; *supra* pp. 2-3. On the other hand, the government maintains that this text *requires* OSHA to consider costs in determining whether proposed standards are "'economically … feasible.'" Opp. 25; *see* Opp. 27. That the government can claim that the same phrase means two mutually exclusive things within the span of a few pages in a single brief only further confirms that this provision gives OSHA "almost unlimited discretion" with "no specific restrictions that meaningfully constrain the agency." *NFIB v. DOL*, 142 S. Ct. 661, 669 (2022) (Gorsuch, J., concurring) (cleaned up). By any measure, that is "an unconstitutional delegation of legislative authority." *Id.*

7

**D.     The Court Should Enter Declaratory and Injunctive Relief.**

Lastly, the government does not dispute that declaratory and injunctive relief are warranted if Allstates prevails on the merits. *See* Mot. 26-27. It does, however, mischaracterize the consequences of that relief. In the government's telling, Allstates "asks this Court to invalidate *every single* occupational safety standard" that OSHA has "ever issued in the 50 years since Congress delegated the authority to issue safety standards." Opp. 1. But the overwhelming majority of OSHA safety standards have been issued under *§ 655(a)*, which is not at issue. *See supra* pp. 4-5. Instead, this case concerns *§ 655(b)*, which OSHA has sparingly invoked to issue safety standards over the last 50 years—only a few dozen times so far as Allstates can tell—leaving the only "breathtaking" aspect of this case the sweeping delegation in the Act. Opp. 1.

**II.     This Court's Jurisdiction Is Not In Doubt.**

Unable to defend the Act on the merits, the government spends most of its time arguing that this Court lacks jurisdiction. The government does not deny that district courts ordinarily have jurisdiction over facial nondelegation challenges to statutes under 28 U.S.C. § 1331, which gives courts "jurisdiction of all civil actions arising under the Constitution." Instead, the government relies on 29 U.S.C. § 655(f), which provides that a party "may" challenge an OSHA "standard" directly in the courts of appeals. But § 655(f) does not apply here because Allstates is not challenging any "standard" that OSHA has promulgated—it is challenging the constitutionality of the underlying *statute* that authorizes OSHA to regulate.

8

### A.     Allstates Is Not Challenging Any OSHA "Standard."

The government tries to shoehorn this case into § 655(f) by arguing that Allstates' facial separation-of-powers challenge to OSHA's authorizing statute is nothing more than a challenge to the particular "standards" that OSHA has issued. Opp. 13-18. But the Supreme Court rejected the same argument in *Free Enterprise*. There, the petitioners argued that the Sarbanes-Oxley Act violated the separation of powers "by conferring wide-ranging executive power" on an agency without subjecting it to presidential control. 561 U.S. at 487. They sought declaratory relief and "an injunction preventing the [agency] from exercising its powers," thus ensuring that its "auditing standards" would not be "enforced" against them in violation of the Constitution. *Id*. at 487, 513. In response, the government argued the district court lacked jurisdiction, pointing to a provision that allowed a challenge to an auditing standard to be brought in a court of appeals "within sixty days after" the SEC approved it. 15 U.S.C. § 78y; *see Free Enterprise*, 561 U.S. at 489.

The Supreme Court rejected that theory, holding that this statute neither "expressly" nor "implicitly" ousted "the jurisdiction that other statutes," including § 1331, "confer on district courts." *Free Enterprise*, 561 U.S. at 489. As it explained, the petitioners were not objecting "to any of the [agency]'s auditing standards," but were instead challenging the Sarbanes-Oxley *statute* that created the agency and authorized it to promulgate and enforce the standards. *Id*. at 490. For that reason, the petitioners' separation-of-powers challenge to the statute was entirely "'collateral' to any [agency] orders or rules from which review might be sought." *Id*. Or as the D.C.

9

Circuit put it in the same litigation, a district court may "consider a facial challenge to a statute's constitutionality"—even when "an administrative review scheme" is in play—"so long as that challenge is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action." 537 F.3d 667, 671 (D.C. Cir. 2008) (quoting *Time Warner Ent. Co. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996)).

The same is true here. As in *Free Enterprise*, Allstates is not targeting any "standard" promulgated by the agency, or any other action taken by the agency. Instead, Allstates is bringing a separation-of-powers challenge to the *statute* that empowers the agency to regulate. The complaint itself makes this perfectly clear, as it seeks "[a] declaration that Section 6(b) of the OSH Act violates Article I of the Constitution" and an order "enjoining Defendants from enforcing" the statute, "to the extent such enforcement is predicated on Section 6(b)." Compl., Prayer ¶¶ 1-2. The complaint does not claim "agency error" in promulgating any standard. *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 675 (6th Cir. 2018). Indeed, if OSHA had never issued a safety standard under § 655(b), Allstates' constitutional theory would be the same. Accordingly, this is not a challenge to *agency* action, but rather a challenge to *Congress's* action in delegating its legislative power to the agency under the Act.

To be sure, Allstates' challenge may *affect* OSHA's ability to promulgate and enforce its "safety standards" going forward. Opp. 14. But the same was true in *Free Enterprise*, where the challenge to the Sarbanes-Oxley Act likewise threatened to impact the agency's power to promulgate and enforce its "auditing standards." 561

10

U.S. at 513. The fact that a facial separation-of-powers challenge may have an effect on agency standards does not make it a challenge *to the standards themselves*. Otherwise, *Free Enterprise* would have come out differently.

**B.     Section 655(f) Does Not Implicitly Oust The Court's Jurisdiction.**

Since Allstates is not challenging any OSHA "standard," the government is left to argue that § 655(f) somehow implicitly strips this Court of jurisdiction under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). But under *Thunder Basin*, "[p]rovisions for agency review do not restrict judicial review unless the statutory scheme displays a fairly discernible intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within the statutory structure.'" *Free Enterprise*, 561 U.S. at 489. Accordingly, claims are not implicitly precluded if they fall "outside the agency's expertise" and are "wholly collateral to a statute's review provisions." *Thunder Basin*, 510 U.S. at 212-13. And the lack of implicit jurisdiction-stripping is "particularly" clear if the inability to bring suit in district court "could foreclose all meaningful judicial review." *Id*. at 213.

Here, § 655(f) does not reflect any "fairly discernible intent" by Congress to strip this Court of its ordinary jurisdiction to hear constitutional challenges to the Act. As an initial matter, *Thunder Basin* is not even implicated here because that doctrine is triggered only when "Congress has allocated initial review *to an administrative body*." *Id*. at 207 (emphasis added); *see Free Enterprise*, 561 U.S. at 489 (considering doctrine due to "[p]rovisions for agency review"); *Jones Bros.*, 898 F.3d at 675 (explaining that the "governing statutes" in *Thunder Basin* and *Elgin*

11

"required the petitioners to seek shelter first under the administrative review process"). Under § 655(f), however, challenges to OSHA safety standards must "be brought in a federal court of appeals in the first instance—not before the agency." Opp. 17. Thus, as the government notes, one of the questions under *Thunder Basin*— whether the claim at issue "is beyond the expertise of the agency"—"does not apply here." *Id*. And that is a telltale sign that *Thunder Basin* does not apply here either.

In any event, all of the *Thunder Basin* factors cut strongly against implicit jurisdiction-stripping here. First, it is settled that "constitutional claims," especially the type here, fall "outside [an agency's] competence and expertise," *Free Enterprise*, 561 U.S. at 491, because an "agency may not invalidate the statute from which it derives its existence and that it is charged with implementing," *Jones Bros.,* 898 F.3d at 673. Indeed, the government does not even try to argue that OSHA has any special expertise on the nondelegation doctrine. Instead, it asserts that "the challenged statute [is] one that the [agency] regularly construes, and its statutory interpretation could alleviate constitutional concerns." Opp. 17 (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012)). But in the nondelegation context, an agency's statutory interpretation creates more constitutional problems than it solves. As discussed, an agency cannot "cure an unconstitutionally standardless delegation of power" by rewriting the law to forgo "some of that power," since that "would *itself* be an exercise of the forbidden legislative authority." *Whitman*, 531 U.S. at 473; *see supra* Pt. I.C.

Second, Allstates' facial challenge to the Act is "wholly collateral" to OSHA's statutory-review scheme. Just as in *Free Enterprise*, Allstates is not challenging any

of the agency's "orders or rules," but is instead challenging the underlying statute that empowers the agency to regulate as a violation of the separation of powers. 561 U.S. at 490. While the government notes that an "exclusive review scheme" is not necessarily "inapplicable simply because a [plaintiff] challenges a covered action on the ground that the statute authorizing that action is unconstitutional," Opp. 14 (quoting *Elgin*, 567 U.S. at 13), that is irrelevant because Allstates is not challenging any "covered action" here. In *Elgin*, the fired government employees were challenging the legality of their terminations, which were clearly "covered" actions under the express terms of the administrative-review scheme. Their "constitutional claims" were merely "the vehicle" by which they sought "to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned." 567 U.S. at 22. Here, by contrast, Allstates is not challenging any "covered action." It is not attacking any OSHA "standard" under § 655(f). Nor is it challenging any OSHA order requiring administrative review under § 660(a). In fact, the government concedes § 660(a) "is inapplicable" because this case does not involve "an enforcement action," which is why it relies exclusively on § 655(f). Opp. 19 n.4.

Third, the government contends that jurisdiction-stripping can be implied here because it would not "foreclose all meaningful judicial review." Opp. 16 n.3. But as *Thunder Basin* itself makes clear, the availability of alternative avenues of judicial review does not by itself establish that Congress impliedly stripped district courts of their ordinary jurisdiction under 28 U.S.C. § 1331. Rather, jurisdiction-stripping will not be implied for claims that are "wholly collateral to a statute's review provisions

13

and outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212. The lack of alternative avenues of judicial review is just icing on the cake, as it makes the lack of jurisdiction-stripping "particularly" clear. *Id*. 212-13.

Here, there is no doubt that precluding judicial review of this type of challenge "could foreclose all meaningful judicial review." *Id*. at 213. The government claims that Allstates has alternative avenues of meaningful judicial review available because it could (1) challenge OSHA safety standards "directly in federal courts of appeals" within 60 days after they are promulgated or (2) violate a safety standard and wait for an "enforcement proceeding," where it could "raise the validity of any standard" as a defense and then seek "ultimate review by a federal court of appeals." Opp. 16 n.3. But the same two options were equally available to the petitioners in *Free Enterprise*, and the Supreme Court held that they did not support an inference of implied jurisdiction-stripping. The same is true here.

As to the first option, the government claims that § 655(f) implicitly requires Allstates to "select and challenge" an OSHA standard "at random" in order to challenge the constitutionality of the Act. *Free Enterprise*, 561 U.S. at 490. But that makes no sense; it would be "an odd procedure for Congress to choose, especially because only *new* [standards], and not existing ones, are subject to challenge." *Id*. Indeed, that inference is especially inapt here, as Allstates' last opportunity to challenge a standard via § 655(f) ended over two years ago. *See* Opp. 19. There is no reason to infer that Congress *implicitly* wanted to eliminate parties' ability to bring facial challenges to the Act more than 60 days after OSHA issued a new standard.

14

As to the second, the government suggests that Allstates cannot "win access to" judicial review unless it first "incur[s] a sanction" and takes the risk of "severe punishment should its challenge fail." *Free Enterprise*, 561 U.S. at 490 (emphasis omitted). But courts "normally do not require plaintiffs to bet the farm by taking the violative action before testing the validity of the law," and *Thunder Basin* is no exception. *Id.* (cleaned up). As a practical matter, a small business like Allstates is unable to bear this risk, which means that barring it from bringing this challenge in court would effectively deprive it of any meaningful opportunity for judicial review at all. *See Ohio Coal Ass'n v. Perez*, 192 F. Supp. 3d 882, 896-97, 900 (S.D. Ohio 2016). Accordingly, this possibility—like the idea of pursuing random challenges to safety standards—cannot support any reasonable inference that Congress implicitly intended to preclude Allstates from bringing this claim in this Court. *Free Enterprise*, 561 U.S. at 490-91.

Finally, even if this were a close question, any doubt should be resolved in favor of this Court's jurisdiction. The *Thunder Basin* doctrine is a theory of "implied preclusion," *Elgin*, 567 U.S. at 12—it assumes Congress implicitly displaced § 1331 with respect to a particular set of claims by routing them through an administrative-review scheme. But given the "strong presumption that repeals by implication are disfavored," *Epic Sys.*, 138 S. Ct. at 1624 (cleaned up), courts should be wary in using *Thunder Basin* to "eliminat[e] alternative routes to federal court review, especially in the context of separation-of-powers claims of the sort at issue here," *Cochran v. SEC*, 20 F.4th 194, 201 (5th Cir. 2021) (en banc).

15

Dated: February 14, 2022                    Respectfully submitted,

_/s/ Christopher M. McLaughlin_

Brett A. Shumate (*pro hac vice*)           Christopher M. McLaughlin (0078186)
Email: bshumate@jonesday.com                Email: cmmclaughlin@jonesday.com
John M. Gore (*pro hac vice*)               JONES DAY
Email: jmgore@jonesday.com                  North Point, 901 Lakeside Avenue
Anthony J. Dick (*pro hac vice*)            Cleveland, Ohio 44114-1190
Email: ajdick@jonesday.com                  Telephone: (216) 586-3939
JONES DAY                                   Facsimile: (216) 579-0212
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113                 J. Benjamin Aguiñaga (*pro hac vice*)
Telephone: (202) 879-3939                   Email: jbaguinaga@jonesday.com
Facsimile: (202) 626-1700                   JONES DAY
                                            2727 North Harwood Street Suite 500
                                            Dallas, Texas 75201-1515
                                            Telephone: (214) 220-3939
                                            Facsimile: (214) 969-5100

                                            *Counsel for Plaintiff Allstates Refractory*
                                            *Contractors, LLC*

16

## <u>CERTIFICATES OF SERVICE AND LENGTH</u>

I hereby certify that on February 14, 2022 a copy of the foregoing Plaintiff's Reply in Support of Motion for Summary Judgment and Opposition to Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

I also hereby certify that this memorandum complies with the page limits set forth in the Court's October 25, 2021 Scheduling Order.

*/s/ Christopher M. McLaughlin*
*Counsel for Plaintiff*
*Allstates Refractory Contractors, LLC*