# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ALLSTATES REFRACTORY CONTRACTORS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:21-cv-01864 |
| v. | ) ) | Judge Jack Zouhary |
| MARTIN WALSH, et al., | ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND, IN THE ALTERNATIVE, <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ....................................................................................................... 1

ARGUMENT................................................................................................................ 2

    I.    This Court Lacks Jurisdiction. ........................................................................ 2

    II.    Delegated Authority to Issue Safety Standards Is Constitutional. ........................ 9

CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Adorers of the Blood of Christ v. FERC,*
   897 F.3d 187 (3d Cir. 2018) ............................................................... 2

*Am. Textile Mfrs. Inst., Inc. v. Donovan,*
   452 U.S. 490 (1981) ........................................................................ 11

*Am. Trucking Associations, Inc. v. E.P.A.,*
   175 F.3d 1027 (D.C. Cir.) ................................................................ 13

*Blitz v. Napolitano,*
   700 F.3d 733 (4th Cir. 2012) ............................................................. 4

*Blocksom & Co. v. Marshall,*
   582 F.2d 1122 (7th Cir. 1978) .......................................................... 12

*Cochran v. SEC,*
   20 F.4th 194 (5th Cir. 2021) .............................................................. 7

*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012) .................................................................. 1, 3, 4, 5

*Free Enter. Fund. v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010) ....................................................................... 6, 7

*Gundy v. United States,*
   139 S. Ct. 2116 (2019) ............................................................... 10, 14

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.,*
   448 U.S. 607 (1980) ........................................................................ 10

*Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.,*
   393 F. Supp. 2d 1362, 1385 1385, *reconsideration denied,* 2005 WL 1073633 (M.D. Ga.,
   May 4) ............................................................................................. 3

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. OSHA*
   37 F.3d 665 (D.C. Cir. 1994) .................................................. 8, 13, 15

*Jones v. United States,*
   526 U.S. 227 (1999) ........................................................................ 15

*Nat'l Mar. Safety Ass'n v. Occupational Safety & Health Admin.,*

649 F.3d 743 (D.C. Cir. 2011) ............................................................................ 8, 13

*NBC v. U.S.*,
319 U.S. 190 (1943) ............................................................................................ 14

*Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin.*,
62 F.3d 37 (1st Cir. 1995) .................................................................................. 2

*New York Cent. Sec. Corp. v. United States*,
287 U.S. 12 (1932) .............................................................................................. 15

*Oil, Chem., & Atomic Workers Union v. OSHA*,
145 F.3d 120 (3d Cir. 1998) ............................................................................. 2

*Owens v. Republic of Sudan*,
531 F.3d 884 (D.C. Cir. 2008) ......................................................................... 11

*RSR Corp. v. Donovan*,
747 F.2d 294 (5th Cir. 1984) ........................................................................... 2

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ..................................................................................... 10, 13

## Statutes

15 U.S.C. § 78y ............................................................................................ 6, 7, 8, 9

28 U.S.C. § 1331 ................................................................................................. 4

29 U.S.C. § 651 ...................................................................................... 11, 12, 14, 15

29 U.S.C. § 652 ...................................................................................... 10, 12, 13, 14

29 U.S.C. § 655 ............................................................................................ *passim*

## Regulations

29 C.F.R. pt. 1926, Subpart CC .................................................................... 9

58 Fed. Reg. 16,612 (March 30, 1993) ...................................................... 15

83 Fed. Reg. 56,198 (Nov. 9, 2018) ............................................................ 9

## Other Authorities

S. Rep. No. 91-1282, 91st Cong., 2d Sess., 8, *reprinted in*, (1970) U.S. Code Cong. & Ad.
News, pp. 5177, 5184 ..................................................................................... 9

## INTRODUCTION

This Court does not have jurisdiction over Allstates' lawsuit.  There is no dispute that claims within the scope of 29 U.S.C. § 655(f)—pre-enforcement challenges to the validity of OSHA safety standards—must be filed at the applicable Court of Appeals prior to the sixtieth day after the standard is promulgated.  Section 655(f) covers claims made by a party that asserts it is "adversely affected" by OSHA's safety standards and that "challeng[es] the validity of such standard[s]."  Both of those criteria are met here. Allstates' complaint is both untimely and filed in the wrong court.

Allstates responds that § 655(f) does not apply because it "is challenging the constitutionality of the underlying *statute* that authorizes OSHA to regulate"—not the standards themselves.  Pl.'s Reply, ECF No. 25 at 8.  But that is a distinction without a difference.  This argument ignores the text of 29 U.S.C. § 655(f), which covers *all* pre-enforcement validity challenges to OSHA standards without exception.

Moreover, the Supreme Court already rejected Allstates' reasoning when petitioners in *Elgin v. Dep't of Treasury*, who had been discharged from their government jobs, challenged the constitutionality a statute requiring registration for the selective service as a condition of government employment.  567 U.S. 1, 5 (2012).  Plaintiffs in that case argued that the Civil Service Reform Act (CSRA), which provides the exclusive means to challenge a discharge, did not apply because those plaintiffs were challenging "the statute authorizing" discharge, but not any *specific* discharge.  *Id.*  The Court rejected

1

that reasoning and held that petitioners were required to use the review scheme created by Congress in the CSRA.  The same reasoning applies here.

On the merits, Plaintiff Allstates continues to argue that this should be the third case in history to strike down a statute under the non-delegation doctrine.  Every circuit to have considered the issue has held that the OSH Act's authority to issue safety standards pursuant to § 655(b) is constitutional.  Plaintiff provides no good reason why this Court should depart from those well-reasoned opinions.

## ARGUMENT

### I.     This Court Lacks Jurisdiction.

Plaintiff does not contest that pre-enforcement challenges to the validity of OSHA standards must conform to the jurisdictional and timing requirements in § 655(f).  *See generally* Pl.'s Reply at 8–9; Defs.' Memo, ECF No.  24-1 at 10–13; *see also RSR Corp. v. Donovan*, 747 F.2d 294, 299 (5th Cir. 1984); *Oil, Chem., & Atomic Workers Union v. OSHA*, 145 F.3d 120, 123 (3d Cir. 1998); *Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin.*, 62 F.3d 37, 40 (1st Cir. 1995). [1]

In its reply, Allstates insists that it is not challenging the validity of "any OSHA

---

[1] Allstates argues that *Thunder Basin* only applies to administrative review regimes, Pl.'s Reply at 11, but cites to no cases so limiting *Thunder Basin's* applicability.  Courts have regularly held that *Thunder Basin*'s reasoning applies with equal force to statutes that vest courts of appeals with authority to review agency actions in the first instance.  *See e.g.*, *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 196 (3d Cir. 2018).

'standard'" but rather it challenges the *statute* authorizing OSHA to issue safety standards.  Pl.'s Reply at 11.  But, as explained in Defendants' opening brief, a pre-enforcement lawsuit that challenges the "validity" of OSHA standards on *any* basis, even under the Constitution, is covered by § 655(f).  Defs.' Br., pp. 14–16; *see, e.g., Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1385 1385, *reconsideration denied*, 2005 WL 1073633 (M.D. Ga., May 4, 2005).  Allstates' argument that standards are invalid based on a supposedly unconstitutional authorizing statute does not bring its claim outside the review process established by Congress.

The Supreme Court in *Elgin* rejected an argument based on that same flawed reasoning.  567 U.S. at 5.  The *Elgin* plaintiffs were "former federal competitive service employees who failed to" register for the selective service and, after they were discharged, challenged the constitutionality of the federal statute that bars employment for "anyone who has knowingly and willfully failed to register."  *Id.*  The question in that case was whether their claims should have been brought under the regime set up by the CSRA, which "provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action."  *Id.*  The Court looked to the text of the CSRA to conclude that the petitioners were "covered employees" (federal employees meeting certain criteria) who were challenging "covered agency actions"

(discharge), which meant that their claims were covered by the CSRA.  *Id.* at 13. [2]

The *Elgin* petitioners—like Plaintiff here—argued that their claims were "'wholly collateral' to the CSRA scheme" because they challenged the constitutionality of the underlying *statute* that authorized the discharge, not any particular discharge.  *Id.* at 22.  But the Court rejected that argument and focused on the *action* that purportedly caused harm to the plaintiff—the discharge—not plaintiffs' underlying constitutional theory.  The Court held that petitioners' case challenged discharges and the requested relief thus fell squarely within the type of relief required to be brought within the CSRA framework.

The Court explained that petitioners' argument sought "to carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes."  *Id.* at 12.  The Court rejected that request, noting that "[n]othing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional."  *Id.*

The text of § 655(f) requires the same result in this case.  Section 655(f) applies to

---

[2] Like the petitioners in *Elgin*, Allstates argues that 28 U.S.C. § 1331, which confers federal question jurisdiction to district courts, requires this court to exercise subject matter jurisdiction.  *See* Pl.'s Reply at 8; *Elgin* 567 U.S. at 8–9.  But the CSRA divested district court jurisdiction over the *Elgin* constitutional challenge.  *Elgin*, 567 U.S. at 23.  For the same reasons, 29 U.S.C. § 655(f) divests district court jurisdiction over this case.  *See* Defs.' Br., pp. 9-13; *see also Blitz v. Napolitano*, 700 F.3d 733, 742 (4th Cir. 2012) ("agency decisions are commonly subject to such jurisdiction-channeling provisions, and final agency actions are generally reviewed in the courts of appeals").

anyone who "may be adversely affected by a standard issued under this section" and who "file[s] a petition challenging the validity of such standard."  29 U.S.C. § 655(f).  Allstates' case meets these criteria.  Allstates claims to be "adversely affected by [] standard[s] issued" pursuant to § 655(b).  *Id.; see generally*, Decl. of D. Boothe, ECF No. 23-2, ¶¶ 9–30.  And Plaintiff challenges the validity of OSHA standards, arguing that they are all invalid because they were promulgated pursuant to an unconstitutional statute.  Pl.'s Memo at 3.  Despite Allstates' attempts to distance its claim from the clear dictates of the statute (*see* Pl.'s Reply at 12–13), there is no support in the OSH Act for the notion challenging OSHA standards based on a constitutional of invalidity, exempts a party from the review scheme that Congress created for challenging standards.

This case thus falls within the types of challenges Congress described in § 655(f) and must follow the review scheme established by Congress.  Just like the statute at issue in *Elgin*, nothing in § 655(f)'s text "suggests that its exclusive review scheme is inapplicable simply because" a person adversely affected by the promulgation of a standard challenges the validity of the standard "on the ground that the statute authorizing that [promulgation] is unconstitutional."  *See Elgin*, 567 U.S. at 13.  Both the statute and its legislative history make clear that Congress intended § 655(f) [3] to be the exclusive avenue for raising *all* pre-enforcement challenges to the validity of OSHA

---

[3] Parties can also challenge the validity of OSHA standards in enforcement proceedings and subsequent judicial review.  *See* Defs.' Br., pp. 12, 18.

standards. *See*, S. Rep. No. 91-1282, 91st Cong., 2d Sess., 8 (1970), *reprinted in*, U.S. Code Cong. & Ad. News, pp. 5177, 5184 ("[Section 655(f)] would be the exclusive method for obtaining pre-enforcement judicial review of a standard").  Congress' intent would be undermined if parties could ignore the OSH Act's procedures and challenge the validity of OSHA safety standards *en masse* in a district court whenever they desire to do so.

Allstates instead relies on *Free Enterprise*, a case decided two years before *Elgin*, involving a constitutional challenge to a nonprofit corporation whose Board was appointed by the SEC and whose members could only be removed by the SEC for cause. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).  In that case, plaintiffs brought a constitutional challenge to "the double for-cause removal provisions" which "combine[d] to eliminate any meaningful Presidential control over the [Board]."  *Id.* at 488 (citation omitted).  The Board required SEC approval for "the issuance of rules or the imposition of sanctions" but otherwise the Board acted "substantially insulated from the Commission's control."  *Id.* at 486.  The *Free Enterprise* suit challenged the structure and existence of the Board itself—an issue irrelevant here since the President appoints (and can remove) the Secretary who is ultimately responsible for the OSHA safety standards.

While the Court in *Free Enterprise* held that the exclusive review scheme set out in 15 U.S.C. § 78y did not apply, that result turned on the breadth of the constitutional challenge, the particular harm alleged, and the limited scope of § 78y.  Defendants argued that the judicial review scheme set out in 15 U.S.C. § 78y covering "'a final order of the

6

[Securities Exchange] Commission' or 'a rule of the Commission'" prevented petitioners from bringing a stand-alone constitutional claim.  But the *Free Exercise* "petitioners object[ed] to the Board's existence, not to any of its auditing standards*." Free Enter. Fund*, 561 U.S. at 490.  They did not challenge any final order or rule of the SEC, instead they challenged every action of a Board whose members were appointed by the SEC.  For harm, those plaintiffs alleged they were injured from "a report critical of [plaintiff's] auditing procedures," *id*. at 487, which, again, was not a rule or order and thus "not subject to judicial review," *id*. at 490.[4]  The alleged harm arising from actions taken by a purportedly unconstitutional Board was beyond the scope of a statute governing judicial review of SEC final orders or rules.  *Id.*

      This case is different.  The constitutional challenge in *Free Enterprise* implicated the existence of the Board and every single action that the Board took, but Allstates' claim in this case is much narrower and is limited to whether OSHA's safety standards were validly promulgated.  Allstates' theory only implicates the validity of OSHA safety standards promulgated under § 655(b)—not OSHA's power to inspect, issue citations, or impose penalties, nor even the agency's authority to adopt health standards—and thus

---

[4] For same reasons, Plaintiff's reliance on *Cochran v. U.S. Securities & Exchange Commission* is misplaced.  20 F.4th 194, 200 (5th Cir. 2021) ("[Plaintiff's] injury has absolutely nothing whatsoever to do with a final order, and therefore her claim falls outside of § 78y.").

falls squarely within the scope of review covered by § 655(f).

The source of harm is also different.  The harm claimed in *Free Enterprise* arose principally from an "uncomplimentary inspection report" which was not subject to judicial review under § 78y, so it could not be remedied by the procedures in § 78y.  *Id.* at 490.  By contrast, requiring Allstates to conform with the review scheme in § 655(f) does not preclude all avenues for judicial review of Allstates' claim.  *See* Defs.' Br. Mem., pp. 17–18.  Allstates alleges harm from being subject to purportedly invalid safety standards—a harm that could have been remedied through the pre-enforcement procedures established by Congress for challenging OSHA standards, so long as any challenge was timely raised.[5]  Indeed, parties that have previously—and unsuccessfully—challenged the constitutionality of OSHA's authority to issue safety standards have followed the process laid out in § 655(f).  *See e.g., Nat'l Mar. Safety Ass'n v. Occupational Safety & Health Admin.*, 649 F.3d 743, 755 (D.C. Cir. 2011); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. OSHA ("UAW")*, 37 F.3d 665, 668 (D.C. Cir. 1994).  Allstates' argument that precluding judicial review here "could

---

[5] Allstates argues that "if OSHA had never issued a safety standard under § 655(b), Allstate's constitutional theory would be the same."  Reply at 10.  While that may be true, if OSHA had never issued a safety standard under § 655(b), then Allstates would not be subject to any safety standards promulgated under § 655(b) and would have no standing to raise this constitutional theory.  The fact that Allstates' claim turns on whether or not OSHA actually promulgated standards just emphasizes that this case is really about whether OSHA's safety standards promulgated under § 655(b) are valid, and underscores that its challenge must comply with the procedures set out in § 655(f).

8

foreclose all meaningful review" akin to the petitioners' in *Free Enterprise*, Pl.'s Reply at 14, thus misses the mark; while the *Free Enterprise* petitioners' alleged actions and harms beyond the scope of review provided under 15 U.S.C. § 78y, Allstates' challenge to the validity of safety standards falls within the purview of § 655(f).

Congress included § 655(f) to provide a mechanism for parties to raise these types of challenges, and Plaintiff was required to follow those procedures. The supposedly unconstitutional delegation occurred in 1970, so employers have had more than 50 years to bring similar challenges. Within the past three years, Allstates had at least two opportunities to raise its constitutional challenge within the statutory framework that Congress provided. *See* Cranes and Derricks in Construction, 83 Fed. Reg. 56,198 (Nov. 9, 2018); 29 C.F.R. pt. 1926, Subpart CC (§§ 1926.1400-1442) (new standard); Informal Settlement Agreement, ECF No. 23-2, at 16–20 (enforcement). This Court should not allow parties like Allstates to forgo opportunities to raise challenges as Congress intended through § 655(f) and instead file claims in district court challenging the validity of OSHA standards long after the statute of limitations has run.

## II.    Delegated Authority to Issue Safety Standards Is Constitutional.

Even if this Court had jurisdiction, Plaintiff's case would still fail on the merits because the delegation at issue provides an intelligible principle and falls comfortably within the scope of delegations the Supreme Court has previously upheld. "[A] delegation is permissible if Congress has made clear to the delegee 'the general policy'

9

he must pursue and the 'boundaries of his authority.'"  *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality opinion) (cleaned up).  Those parameters are met here.

The text of the OSH Act provides the required intelligible principle: any standards must be "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).  As Plaintiff concedes, the Supreme Court has already found that the word "safe" in the statute requires OSHA to make "a threshold finding of significant risk." *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 643 (1980).  Once OSHA makes that threshold finding, there is no constitutional requirement for Congress to define with any more precision just how "reasonably necessary" or how "appropriate" a standard must be.  "[E]ven in sweeping regulatory schemes we have never demanded . . . that statutes provide a 'determinate criterion' for saying 'how much of the regulated harm is too much.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001).  The Supreme Court, for example, "did not require the statute to decree how 'imminent' was too imminent, or how 'necessary' was necessary enough, or even . . . how 'hazardous' was too hazardous." *Id.* (citation omitted).

Context is also important.  "[W]hen we review statutes for an intelligible principle that limits the authority delegated to a branch outside the legislature, we do not confine ourselves to the isolated phrase in question, but utilize all the tools of statutory construction, including the statutory context and, when appropriate, the factual background of the statute to determine whether the statute provides the bounded

discretion that the Constitution requires."  *Owens v. Republic of Sudan*, 531 F.3d 884, 890 (D.C. Cir. 2008).  When it passed the OSH Act, Congress found "that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments."  29 U.S.C. § 651(a).  The purpose of the OSH Act was, among other things, "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions."  *Id.* § 651(b).  And to effectuate that purpose, Congress "authoriz[ed] the Secretary of Labor to set mandatory occupational safety and health standards."  *Id.* § 651(b)(3).

OSHA safety standards can only "differ[] substantially from an existing national consensus standard" if the agency explains "the reasons why the rule as adopted will better effectuate the purposes of this chapter than the national consensus standard."  29 U.S.C. § 655(b)(8).  In other words, safety standards can only differ substantially if OSHA explains why the proposed standard will "assure so far as possible every working man and woman in the Nation safe and healthful working conditions."  *Id.* § 651(b).

Legislative history is likewise instructive.  The "legislative history makes plain [that] any standard that was not economically or technologically feasible would *a fortiori* not be 'reasonably necessary or appropriate' under the Act."  *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513 n.31 (1981); *see id* at 514–22 (lengthy discussion of legislative history of the OSH Act).

11

Multiple circuits have already determined that the text of the OSH Act provides an intelligible principle for constraining OSHA's discretion when promulgating safety standards under § 655(b).  The Seventh Circuit, for example, held that a non-delegation challenge to OSHA's standards was "without persuasive merit."  *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1126 (7th Cir. 1978).  "The Act plainly articulates its concern with 'personal injuries and illnesses arising out of work situations,' and its policy 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions.'"  *Id.* (quoting 29 U.S.C. §§ 651(b), 652(8)) (citations omitted).  "The occupational safety and health standards which the Secretary is authorized to promulgate are defined as rules requiring practices, methods, and processes 'reasonably necessary or appropriate to provide safe or healthful employment and places of employment.'"  *Id.* (citing § 652(8)).  While "[i]t is true that no one could necessarily predict from the statutory scheme exactly what regulations would be promulgated in any given industry," such precision "is not necessary."  *Id.*  "What is perfectly clear is that the Congress has chosen a policy and announced general standards which guide the Secretary in establishing specific standards to assure the safest and healthiest possible working environments, and which enable the courts and the public to test the Secretary's faithful performance of that command.  Nothing more is required."  *Id*.

The D.C. Circuit has rejected many of the arguments raised by Allstates, explaining that:

12

The delegation of power to OSHA under the OSH Act to set health or safety standards that are 'reasonably necessary or appropriate to provide safe or healthful employment and places of employment,' 29 U.S.C. § 652(8), is no broader than other delegations that direct agencies to act in the 'public interest,' or in a way that is 'fair and equitable,' or in a manner 'requisite to protect the public health,' or when 'necessary to avoid an imminent hazard to the public safety. . . .   In light of these precedents, one cannot plausibly argue that 29 U.S.C. § 652(8)'s 'reasonably necessary or appropriate to provide safe or healthful employment and places of employment' standard is not an intelligible principle.

*Nat'l Mar. Safety Ass'n*, 649 F.3d at 755–56 (citations omitted).

Allstates asks this Court to conclude that those courts of appeals are all wrong. But its attempts to distinguish binding Supreme Court precedent fall flat.  In *Whitman*, the Court upheld the delegation to set air quality standards "at the level that is 'requisite' that is, not lower or higher than is necessary—to protect the public health with an adequate margin of safety."   531 U.S. at 475–76.   Allstates spends much of its reply arguing the stringency of the word "requisite," but it ignores the breadth of the word "adequate."   The EPA was given discretion to determine what levels were within the range that "adequate[ly]" protected public health.  *Id.* [6]  Plaintiff fails to explain how the requirement that a level of protection be "adequate"—a standard which was

---

[6] Plaintiff points to Judge Tatel's dissent in *American Trucking* to argue that the OSH Act delegation is broader than the delegation to the EPA, but ignores that the dissent explained that both OSHA and EPA's delegation were constitutional.  *See Am. Trucking Associations, Inc. v. E.P.A.*, 175 F.3d 1027, 1058 (D.C. Cir.) (J. Tatel, dissenting), *aff'd in part, rev'd in part sub nom. Whitman*, 531 U.S. 457.  The majority of the D.C. Circuit panel found that the EPA's grant of authority was *broader* than the delegation in the OSH Act that was upheld by the D.C. Circuit.  *Id.* at 1037 (citing *UAW*, 37 F.3d at 655).

unanimously upheld by the Supreme Court—is materially different than a requirement that a standard protect workers to an "appropriate" degree.

Plaintiff also tries to minimize the breadth of other delegations that have been upheld by the Supreme Court.  For example, Allstates argues that the phrase "public interest" was sufficient to provide an intelligible principle only because the Court interpreted that phrase to mean "encourag[ing] the large and more effective use of radio." Reply at 3–4 (citing *NBC v. U.S.*, 319 U.S. 190 (1943)).  Allstates argues that "no comparable guidance exists here." *Id.* at 4.  But Plaintiff's argument ignores that the OSH Act directs standards "to provide safe or healthful employment and places of employment," 29 U.S.C. § 652(8) and the purpose of the OSH Act is "to assure, so far as possible, that every working man and woman in the Nation safe and healthful working conditions," *id*. § 651(b).  The OSH Act thus provides more guidance to the agency than the statute at issue in *NBC* and easily clears the standard to avoid a non-delegation issue.

Plaintiff makes no effort to distinguish most of the other cases cited by Defendants where the Supreme Court has "over and over upheld even very broad delegations." *Gundy*, 139 S. Ct. at 2129; *see* Defs.' Br., pp. 22–23.  For example, the authority delegated to Interstate Commerce Commission to regulate in the "public interest" was sufficient when the purpose of the Act was related to "adequacy of transportation service, to its essential conditions of economy and efficiency, and to *appropriate* provision and best use of transportation facilities."  *New York Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24

14

(1932) (emphasis added).  Congress's stated reasons and purpose for passing the OSH Act provide similar guidance.  29 U.S.C. § 651(b).

In short, the text of the statute, standing alone, provides an intelligible principle sufficient to overcome a constitutional challenge based on the non-delegation doctrine. That conclusion is further supported by the structure, context, and legislative history, which provide even more Congressional direction on how the agency should wield its regulatory authority.[7]

## CONCLUSION

The Court should grant Defendants' motion to dismiss, or in the alternative, grant Defendants' cross-motion for summary judgment.

Dated:  February 25, 2022                              Respectfully submitted,

                                                       BRIAN M. BOYNTON
                                                       Principal Deputy Assistant Attorney General

---

[7] Even if this Court finds the non-delegation question is a close one, the appropriate path would be to interpret the OSH Act in such a way that would avoid non-delegation issues. Defs.' Br. at 26–28.  OSHA has long read the OSH Act as substantively cabining its discretion when promulgating safety standards under § 655(b), including requiring findings that the standard would materially reduce a significant risk of serious physical harm, be economically and technologically feasible, and provide a high degree of protection (*i.e.*, one that approaches the limits of feasibility).  *See* 58 Fed. Reg. 16,612, 16,614-16 (March 30, 1993); *UAW*, 37 F.3d at 668.  Allstates' argument that interpretation of a statutes is "rewriting the Act," Pl.'s Reply at 7, is meritless; a court's interpretation of a statute is just that—an interpretation—and the constitutional avoidance cannon simply reflects the courts' "respect for Congress, which [courts] assume legislates in the light of constitutional limitations." *Jones v. United States*, 526 U.S. 227, 239-40 (1999).

15

BRAD P. ROSENBERG
Assistant Director

/s/ Zachary A. Avallone
ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 514-2705
Zachary.a.avallone@usdoj.gov

*Counsel for Defendants*