IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Allstates Refractory Contractors, LLC, | Case No. 3:21 CV 1864 |
| Plaintiff, | MEMORANDUM OPINION |
| -vs- | JUDGE JACK ZOUHARY |
| Martin J. Walsh, et al., | |
| Defendants. | |

### INTRODUCTION

Plaintiff Allstates Refractory Contractors, LLC ("Allstates") filed this suit against the Secretary of Labor and the Occupational Safety and Health Administration (collectively "OSHA"). Allstates asks this Court to declare OSHA's statutory power to promulgate permanent "safety standards" unconstitutional, and to issue a permanent injunction preventing OSHA from enforcing those standards. The parties filed dueling Motions for Summary Judgment, which is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Civil Rule 56(a). This Court heard oral argument and the matter is fully briefed (Docs. 23–26).

### BACKGROUND

*OSHA Permanent Safety Standards*

Congress passed the Occupational Safety and Health Act ("Act") in 1970, declaring the Act's "purpose and policy" was "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). Under the Act, Congress gave

the Secretary of Labor the power "to set mandatory occupational safety and health standards," 29 U.S.C. § 651(b)(3), and vested the Secretary with "broad authority . . . to promulgate different kinds of standards" for health and safety in the workplace." *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 611 (1980) ("*Benzene*")).

The Act tasks OSHA with ensuring "safe and healthful working conditions" in American workplaces. 29 U.S.C. § 651(b). OSHA accomplishes this goal by issuing and enforcing health and safety standards. 29 U.S.C. § 655(b). There are three types of standards: interim, permanent, and emergency. Relevant here are the permanent standards issued under Section 6(b).

### *Allstates*

Allstates is a general contractor that provides furnace services to various glass, metal, and petrochemical facilities (Doc. 23-1 at 13). The company has four full-time employees, but also hires "up to 100" part-time employees, depending on the job (*id.* at 14). "Allstates prides itself on its commitment to worker safety" and spends "thousands" on training employees and complying with OSHA safety standards (*id.*). Allstates has also experienced OSHA penalties firsthand. In 2019, OSHA cited the company for standards violations, including a "serious violation after a catwalk brace fell and injured a worker below" (Doc. 24-1 at 14). Allstates did not contest the citation or seek judicial review (*id.* at 15). Instead, it settled the violation for $5,967 in December 2019 (*id.*).

Allstates argues that OSHA's authority to issue safety standards under Section 6(b) is unconstitutionally broad. It further alleges OSHA imposes penalties in a way that is "arbitrary and abusive" (Doc. 23-1 at 9), and that "a number of OSHA standards are unnecessarily burdensome or dangerous" (*id.* at 14).

**JURISDICTION**

Before turning to the merits of the constitutional challenge, this Court must first address the threshold issue of jurisdiction. The answer to that question lies in the Act's administrative-review framework.

There are essentially two types of challenges to OSHA safety standards -- enforcement and pre-enforcement. Section 658(a) controls enforcement challenges, i.e., situations where OSHA has issued a citation against a company. An employer has fifteen days to notify OSHA that it plans to contest the standard. If the employer timely challenges the standard, it is entitled to an administrative hearing and administrative appeal. Section 655(f) outlines the specific process for "pre-enforcement" challenges, i.e., situations in which OSHA has issued a standard, but not yet enforced that standard against the employer. Any "petition challenging the validity" of an OSHA safety standard must be filed: (1) "prior to the sixtieth day after such standard is promulgated," and (2) "with the United States court of appeals for the circuit wherein [the petitioner] resides or has [their] principal place of business." 29 U.S.C. § 655(f). This 60-day limit is strictly enforced. *See Am. Fed'n of Labor & Cong. of Indus. Orgs. v. OSHA*, 905 F.2d 1568, 1570 (D.C. Cir. 1990) (noting that "statutory time limits on petitions for judicial review of agency action have been held 'jurisdictional and unalterable'") (citations omitted).

Defendants argue the administrative-review framework applies in this case -- meaning Allstates is too late and in the wrong court. But can Allstates sidestep the procedural bars outlined above? According to Allstates, it "is challenging the facial constitutionality of OSHA's *enabling statute*, not its *standards*, rendering the [G]overnment's jurisdictional objection beside the point" (Doc. 25 at 5).

Generally, procedures "designed to permit agency expertise to be brought to bear on particular problems . . . are to be exclusive." *Whitney Nat'l Bank in Jefferson Par. v. Bank of New Orleans & Tr. Co.*, 379 U.S. 411, 420 (1965).  Judicial review is barred where the "statutory scheme" displays a "fairly discernible" intent to limit jurisdiction, and the claims at issue "are of the type Congress intended to be reviewed within th[e] statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994) (citation and internal quotation marks omitted).  However, judicial review is not always foreclosed by a statutory framework.  As noted by the Supreme Court, "we presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 212–213).  So the question becomes:  Does this type of constitutional challenge fall within the OSHA administrative-review framework?

Plaintiff points to *Free Enterprise Fund*, where the Supreme Court examined a challenge to the Public Company Accounting Oversight Board, created under the Sarbanes-Oxley Act of 2002.  561 U.S. 477.  The Board, composed of five members selected by the Securities and Exchange Commission ("SEC"), had the authority to investigate all details of an accounting practice, including hiring, promotion, business relationships, internal-inspection protocols, and professional ethics.  *Id.* at 485.  The SEC had oversight of the Board, but could remove members only for good cause.  *Id.* at 486.  Similarly, the President could remove the SEC Commissioners only for good cause, meaning they could not be removed absent "inefficiency, neglect of duty, or malfeasance in office."  *Id.* at 487 (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 620 (1935)).  This resulted in a dual layer of "good-cause tenure."  *Id.*  The Supreme Court held that the statutory-review scheme did not bar judicial review, because: (1) forcing plaintiff to wait to be sanctioned

4

was not a "meaningful" avenue of relief; and (2) the constitutional claims were "outside the Commission's competence and expertise," "and the statutory questions involved do not require technical considerations of agency policy." *Id.* at 490–91 (cleaned up).

The same logic applies here. First, Allstates has no other meaningful avenue of relief. If this Court does not have jurisdiction to hear this constitutional claim, Allstates would be forced to "bet the farm" by waiting to incur OSHA penalties in order to challenge the constitutionality of OSHA itself (Doc. 25 at 19). Second, Congress did not intend for the agency to review such a claim. Indeed, OSHA has no expertise in adjudicating "broad, systemic constitutional challenges to the [Act] and [OSHA's] administration of it that are not tied to any individual enforcement challenges." *Elk Run Coal Co. v. U.S. Dep't of Labor*, 804 F. Supp. 2d 8, 22 (D.D.C. 2011). *See also Ohio Coal Ass'n v. Perez*, 192 F. Supp. 3d 882, 898 (S.D. Ohio 2016) (holding that *Thunder Basin* does not strip the district court of jurisdiction where the "claims do not germinate from a 'violation[] of the Act and its regulations'" or "challenge . . . an enforcement action taken by the [OSHA]").

In short, Allstates challenges the constitutionality of the underlying statute -- not any particular safety standard. Because this challenge is "'collateral' to any [OSHA] orders or rules from which review might be sought," *Free Enterprise Fund*, 561 U.S. at 490, this Court proceeds to address the merits of the claim.

### CONSTITUTIONALITY

To demonstrate a permanent injunction is warranted, a party must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

5

(2006). The parties agree that the irreparable-injury prong is satisfied. And "the harm to the opposing party and the public interest factors merge when the Government is the opposing party." *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (citation and internal quotation marks omitted). To prevail, Allstates must show "actual success" on the merits with respect to the constitutionality of OSHA's permanent safety standards. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (citation omitted).

### *Permanent Standards*

So what is an acceptable permanent safety standard? The Act defines an "occupational safety or health standard" as a standard "reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). Before a standard may be enacted, OSHA "must make 'a threshold finding that a place of employment is unsafe -- in the sense that significant risks are present and can be eliminated or lessened by a change in practices.'" *Nat'l Mar. Safety Ass'n v. OSHA*, 649 F.3d 743, 750 (D.C. Cir. 2011) (quoting *Benzene*, 448 U.S. at 642). The standards "must also be developed using" a rigorous process that includes notice, comment, and an opportunity for a public hearing. *Nat'l Fed'n of Indep. Bus. v. Dep't of Labor*, 142 S. Ct. 661, 663 (2022) (citing 29 U.S.C. § 655(b)).

There are two types of permanent safety standards: (1) health, dealing with "latent hazards, such as carcinogens"; and (2) safety, addressing "hazards that cause immediately visible physical harm." *Int'l Union v. OSHA*, 938 F.2d 1310, 1313 (D.C. Cir. 1991). The first category involves "toxic materials or harmful physical agents." 29 U.S.C. § 655(b)(5). The second involves "permanent standards other than those dealing with toxic materials and harmful physical agents." *Benzene*, 448 U.S. at 640 n.45. These standards regulate things such as hand tools, equipment, signage, and working surfaces.

*Non-Delegation Doctrine*

Allstates' argument in support of an injunction is straightforward -- Congress violated the Constitution by delegating to OSHA the authority to write permanent safety standards. Article I of the Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." This principle, known as the "nondelegation doctrine," prevents Congress from "transfer[ing] to another branch powers which are strictly and exclusively legislative." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation and internal quotation marks omitted). "But Congress may confer substantial discretion on executive agencies to implement and enforce the laws." *Id.* In doing so, "Congress must lay down an intelligible principle to which the person or body authorized to act is directed to conform." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 458 (2001) (citing *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). "The standards for that principle are not demanding." *Gundy*, 139 S. Ct. at 2120. "Only twice in this country's history has the Court found a delegation excessive, in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." *Id.* (quoting *Mistretta v. United States*, 488 U.S. 361, 373, n.7 (1989)). See *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935).

To determine if there is an intelligible principle here, we must first examine the section of the Act that enables OSHA to promulgate safety standards. Allstates does not challenge OSHA's authority to promulgate health standards. That section of the Act requires OSHA to set standards that "most adequately assure[], to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his working life." 29 U.S.C. § 655(b)(5). The Supreme Court has elaborated that, under this provision, OSHA must "enact the most protective standard possible to eliminate a significant risk of material

health impairment, subject to the constraints of economic and technological feasibility," with no room for "any further balancing" of costs and benefits. *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 495, 513 (1981).

However, there is no similar provision in the statute for safety standards. Instead, the guidance for these standards comes from the Act's definition section, which states: "The term 'occupational safety and health standard' means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). The Court outlined in *Benzene* that "safe" in this context requires OSHA to make "a threshold finding that a place of employment is unsafe -- in the sense that significant risks are present." 448 U.S. at 642. The Court has not yet addressed the meaning of "reasonably necessary or appropriate," but appellate courts have weighed in. 29 U.S.C. § 652(8).

In *National Maritime Safety Association v. OSHA*, plaintiff claimed that Congress did not provide an intelligible principal to guide OSHA's promulgation of health and safety standards. 649 F.3d 743 (D.C. Cir. 2011). The D.C. Circuit flatly rejected the argument:

> The delegation of power to OSHA under the [ ] Act to set health or safety standards that are "reasonably necessary or appropriate to provide safe or healthful employment and places of employment," 29 U.S.C. § 652(8), is no broader than other delegations that direct agencies to act in the "public interest," or in a way that is "fair and equitable," or in a manner "requisite to protect the public health," or when "necessary to avoid an imminent hazard to the public safety," . . . . In light of these precedents, one cannot plausibly argue that 29 U.S.C. § 652(8)'s "reasonably necessary or appropriate to provide safe or healthful employment and places of employment" standard is not an intelligible principle.

649 F.3d at 755–56 (cleaned up). Previously, in *Blocksom & Co. v. Marshall*, the Seventh Circuit did the same:

8

> It is true that no one could necessarily predict from the statutory scheme exactly what regulations would be promulgated in any given industry, but that is not necessary. What is perfectly clear is that the Congress has chosen a policy and announced general standards which guide the Secretary in establishing specific standards to assure the safest and healthiest possible working environments, and which enable the courts and the public to test the Secretary's faithful performance of that command. Nothing more is required.

582 F.2d 1122, 1126 (7th Cir. 1978). Plaintiff fails to distinguish, or even mention, these cases. And Plaintiff makes no new argument that would cast doubt on their reasoning.

Plaintiff concedes the Act requires a threshold finding of significant risk (Doc. 23-1 at 6). OSHA next must determine what standards are "reasonably necessary or appropriate" to mitigate that risk. 29 U.S.C. § 652(8). This is enough guidance to overcome the non-delegation challenge. *Whitman* is instructive on this point. In that case, the Court upheld the EPA's authority to set air-quality standards. *Whitman*, 531 U.S. 457. Allstates claims *Whitman* is distinguishable, because there, Congress empowered the EPA to "set air quality standards 'requisite to protect the public health'" (Doc. 25 at 6). But that's not the whole story. The EPA was given authority to set standards "at the level that is 'requisite' -- that is, not lower or higher than is necessary -- to protect the public health with an *adequate* margin of safety." *Whitman*, 531 U.S. at 475–76 (emphasis added). Thus, Congress delegated to the EPA the discretion to determine the adequate level of public safety, and then set standards based on that determination. So too here.

After OSHA makes the threshold finding of significant risk, the agency has discretion to determine what safety standards are "reasonably necessary or appropriate" to mitigate that risk. 29 U.S.C. § 652(8). As the Court noted, "even in sweeping regulatory schemes we have never demanded . . . that statutes provide a 'determinate criterion' for saying 'how much of the regulated harm is too much.'" *Whitman*, 531 U.S. at 475. The Court has never "require[d] the statute to decree how 'imminent' was too imminent, or how 'necessary' was necessary enough, or even . . . how 'hazardous' was too hazardous." *Id.* (citation omitted).

Context also matters. The purpose of the Act was, among other things, "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). And to effectuate that purpose, Congress "authoriz[ed] the Secretary of Labor to set mandatory occupational safety and health standards." 29 U.S.C. § 651(b)(3). And OSHA may only promulgate permanent standards that "differ[] substantially from an existing national consensus standard" if the agency explains why the new standard "will better effectuate the purposes" of the Act. 29 U.S.C. § 655(b)(8). These provisions provide guidance to construe the Act's definitions. Take for instance *New York Central Securities Corporation v. United States*, where the Court found the Interstate Commerce Commission's authority to regulate in the "public interest" was sufficient when the purpose of the enabling statute was related to "adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provision and best use of transportation facilities." 287 U.S. 12, 25 (1932). Or *National Broadcasting Company v. United States*, where the Court held the Federal Communications Commission's authority to regulate in the "public interest" was sufficient to provide an intelligible principle because that phrase effectuated the purpose of "encourag[ing] the large and more effective use of radio." 319 U.S. 190 (1943). And again, in *Yakus v. United States*, the Court approved the delegation of power to the Office of Price Administration to fix wartime commodities prices at a level that "in [the Administrator's] judgment will be generally fair and equitable and will effectuate the purposes of th[e] Act." 321 U.S. 414, 420 (1944).

"[T]he Court has over and over upheld even very broad delegations." *Gundy*, 139 S. Ct. at 2117. Plaintiff asks this Court to disregard these precedents -- an invitation this Court declines.

## CONCLUSION

Section 6(b) safety standards cover dozens of workplace concerns -- everything from walking surfaces and fall-protection to respiratory gear and eyewash stations (*see* Doc. 1 at 10–15). Plaintiff asks this Court to enjoin OSHA from enforcing this broad range of standards against all employers nationwide. This Court is skeptical of district court injunctions "ordering the [G]overnment to take (or not take) some action with respect to those who are strangers to the suit." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). "Injunctions like these [] raise serious questions about the scope of courts' equitable powers under Article III." *Id.* See also *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, J., concurring) (noting that "a district court should think twice -- and perhaps twice again -- before granting universal anti-enforcement injunctions against the federal government").

In any event, this Court agrees that Congress must impose "specific restrictions that meaningfully constrain the agency" for a delegation of power to pass constitutional muster. *Nat'l Fed'n of Indep. Bus.*, 142 S. Ct. at 669 (Gorsuch, J., concurring) (cleaned up). The Supreme Court has "almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law." *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting).

With no binding or persuasive authority supporting its argument, Plaintiff falls short of demonstrating actual success on the merits. OSHA's discretion is sufficiently limited. Plaintiff's Motion (Doc. 23) is denied; Defendants' Motion (Doc. 24) is granted.

IT IS SO ORDERED.

                                                                          s/ *Jack Zouhary*
                                                                     JACK ZOUHARY
                                                                     U. S. DISTRICT JUDGE

                                                                     September 2, 2022