UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALLSTATES REFRACTORY,                Case No. 3:21-CV-01864
CONTRACTORS, LLC,

          Plaintiff,
                                          Toledo, Ohio
     vs.
                                     WEDNESDAY, JUNE 29, 2022
MARTIN J. WALSH, et al.,

          Defendants.

                         - - - - -

          TRANSCRIPT OF ORAL ARGUMENT
     BEFORE THE HONORABLE JACK ZOUHARY
     SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          **Brett A. Shumate**, *Esquire*
                            JONES DAY - WASHINGTON
                            51 Louisiana Avenue, NW
                            Washington, DC 20001

                            **Christopher M. McLaughlin**, *Esquire*
                            JONES DAY - CLEVELAND
                            901 Lakeside Avenue
                            Cleveland, OH 44114

For the Defendants*:*       *(See Page 2.)*


Official Court Reporter:    Diana M. Ziegelhofer, RPR, RCR
                            United States District Court
                            1716 Spielbusch Avenue, Suite 118
                            Toledo, Ohio  43604
                            (419) 213-5538


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

```
 1   APPEARANCES: (continued)

 2   For the Defendants:        Zachary A. Avallone, Esquire
                                U.S. DEPARTMENT OF JUSTICE
 3                              1100 L Street NW
                                Washington, DC 20005
 4
                                Angelita Cruz Bridges, Esquire
 5                              Office of the U.S. Attorney
                                Northern District of Ohio
 6

 7

 8

 9

10

11                                   -  -  -

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**WEDNESDAY, JUNE 29, 2022**

2      (Proceedings commenced in open court at 10:15 a.m.)

3            THE COURT:  Good morning.  We are here on

4  case number 21-CV-1864, Allstates Refractory Contractors,

5  L.L.C. versus Martin J. Walsh, et al.  This matter is

6  before me today for a hearing on cross motions, and those

7  motions are reflected on our docket.  And in a response to

8  those briefings, we submitted some questions for the

9  hearing as well, which are on the docket.  And in response

10  to a request from the Court, we also received a Notice of

11  Authorities from the plaintiff, which is reflected on the

12  docket as well.

13            What we'll do, as I indicated to counsel, is

14  use the questions that we sent out as a starting point, and

15  if history is any indicator, we will be varying from that

16  and getting through it, but not exactly as presented,

17  perhaps.  And I will, of course, let counsel have the

18  opportunity to respond to the questions and also present

19  what they have to offer for the Court that's not already in

20  their briefing.

21            So, with that, let's start with question

22  number one.  And the question is set forth on the docket,

23  so I won't necessarily repeat it verbatim.  The question

24  deals with whether this case is a pre-enforcement action

25  under 655(f), and how this case may be different from the

```
 1   Elgin case.
 2                   MR. SHUMATE:  Your Honor, would you like me
 3   to take the podium or stand?
 4                   THE COURT:  Oh, I forgot to tell you about
 5   that.  You can do whatever is comfortable for you.  I have
 6   no problem with you sitting, no problem with you having
 7   your notes in front of you.  The only thing I ask is that
 8   you be close enough to the microphone so that I can hear
 9   and others can hear.  And to know whether the microphone is
10   on, you look for the word "push", and if the red light is
11   lit, a bit counterintuitive, it means it's on.  If the red
12   light is off, then it's not.
13                   MR. SHUMATE:  Thank you, Your Honor.
14                   May it please the Court:  I think my audio
15   is on.  Brett Shumate for the plaintiff.
16                   So in answer to your first question, Your
17   Honor, no, this is not a pre-enforcement action under
18   Section 655(f).  And this case is also different than
19   Elgin, and I'll address both parts of the Court's question.
20                   So this is not a pre-enforcement case under
21   Section 655(f) because Allstates is not challenging the
22   validity of any OSHA standard or asking the Court for a
23   judicial review of any OSHA standard.
24                   THE COURT:  So does 65 -- I'm sorry, 655(f)
25   have any role in this case?
```

1          MR. SHUMATE:  Not in this case, Your Honor.

2    It plays an important role in other cases, but not in this

3    case.

4          I think it would be helpful if we just turn

5    to the language of the statute, because the statute

6    mentions the word "standard" five times.  It says, "Any

7    person who may be adversely affected by a standard issued

8    under this section may, at any time prior to the sixtieth

9    day after such standard is promulgated, file a petition

10   challenging the validity of such standard with the United

11   States Court of Appeals."  And it goes on, "for a judicial

12   review of such standard."

13         So Allstates in this case is not claiming to

14   be aggrieved by any standard.  We are claiming be to be

15   aggrieved by the statute.  We are not asking for a judicial

16   review of any standard.  Instead, the nature of our case is

17   a challenge to the validity of a federal statute, Section

18   (6)(b) of the OSH Act, that we claim exceeds Congress's

19   power under the Constitution.

20         It's important to clarify what we are not

21   challenging in this case.  We are not asking the Court to

22   review the validity of any OSHA standard.  We are not

23   challenging any enforcement action.  We are not seeking to

24   preempt any enforcement action.  We are not claiming that

25   OSHA committed any error at all, and we are not using our

1  constitutional argument as a vehicle to attack any OSHA

2  standard.

3              So, in short, we are challenging the

4  validity of Congress's delegation of legislative authority

5  to OSHA, not OSHA's exercise of that authority.

6              THE COURT:  All that leading to your

7  conclusion that I have jurisdiction to hear this case.

8              MR. SHUMATE:  Yes, Your Honor.  You have

9  jurisdiction to the federal question statute for the same

10  reason that the district court in the *Free Enterprise Fund*

11  case had jurisdiction to consider a similar separation of

12  powers challenge to a different federal statute.

13             THE COURT:  Let me pause you and give the

14  other side a chance to counter.

15             Why are we even talking about 655(f)?

16             MR. AVALLONE:  Good morning, Your Honor.

17  Zachary Avallone for defendants here.

18             And, in fact, I would go back to exactly

19  what plaintiff's counsel began with, and that's the text of

20  the statute.  And I think that's critically important here,

21  and I think that's what differentiates this case from *Free*

22  *Enterprise*.

23             So going back to the text of the statute, it

24  begins with who it covers.  And it starts with, "Any person

25  who may be adversely affected by a standard issued under

1    this section."  I'm going to pause there for a moment.  The

2    only reason plaintiffs have alleged standing in this case

3    is because they are -- they claim to be adversely affected

4    by standards that were promulgated, that they claim, under

5    an unconstitutional statute.  So for that first part,

6    plaintiffs are covered and the type of individual, the type

7    of entity that 655(f) covers.

8              Going on, it says, "It may, at any time

9    prior to the sixtieth day of such standards promulgated,

10   file a petition challenging the validity of such standard."

11   And here, Your Honor, that's exactly what they are doing.

12   They are challenging the validity of standards, and the

13   theory that they are challenging under is a

14   constitutional -- unconstitutionality.  And so just because

15   that they have claimed that the standards are invalid makes

16   it a facial constitutional attack does not bring it outside

17   the realm of the statute.

18              And the reason we know that is if you take a

19   look at what Justice Thomas did in *Elgin*.  He looked at the

20   language of the statute.  And the plaintiffs in that case

21   made a similar argument.  They said that even if their

22   claims could be somehow related to the text of the statute,

23   they were bringing something different.  They were bringing

24   as applied constitutional challenge to something that is

25   different than the adverse action and --

```
 1                THE COURT:  Let me pause you.

 2                MR. AVALLONE:  Sure.

 3                THE COURT:  You'll get a chance to finish,

 4   but what do you disagree with with what he has said so far?

 5                MR. SHUMATE:  Yes, Your Honor.  I disagree

 6   for three reasons.

 7                First, let's look at the text, and we'll

 8   walk it through.  "Any person who may be adversely affected

 9   by a standard."  So you, Mr. Avallone, talked about

10   standing.  I would point you to paragraph 109 of our

11   complaint, where we allege, "Allstates' injuries are

12   traceable to the legislative delegation of power in Section

13   6(b) of the OSH Act.  In the absence of Congress's

14   delegation of legislative authority to the Secretary in

15   Section 6(b)," we go on to explain how Allstates would have

16   no injury at all.  So our injury, pursuant to statute, is

17   traceable to the statute, not any OSHA standard.

18                Second, under 655(f), the nature of the

19   challenge is directed to the validity of the OSHA standard.

20   In this case, we are not challenging the validity of any

21   standard.  What that means is, in a typical case, OSHA

22   promulgates a new standard, and parties who are adversely

23   affected by that new standard have an opportunity to file a

24   petition for review and the types of arguments they make

25   are that OSHA's standard exceeds OSHA's authority, OSHA
```

1  acted arbitrarily and capriciously.  There is not

2  substantial evidence in the record.  We are not making any

3  of those arguments here.  There is no argument from

4  Allstates that OSHA committed any error at all, because

5  what we are doing is claiming that Congress committed the

6  error by delegating too much legislative authority to the

7  agency just like the claims in the *Free Enterprise Fund* and

8  the *Time Warner* case that we cited as well.  So the

9  nature --

10           THE COURT:  So if they are correct that

11  their challenge is and their dispute is with Congress and

12  not necessarily with OSHA, how else are they to pursue this

13  claim?

14           MR. AVALLONE:  Well, Your Honor, once again,

15  going back to the text of the statute, the text does not

16  differentiate as to who made the error that they are

17  claiming.  It doesn't exclusively apply to whether OSHA

18  makes the error, whether Congress makes the error, or

19  someone else makes the error.

20           And that is what was dispositive in *Elgin*,

21  because what happened in *Elgin* was the individuals

22  challenged the constitutionality of the Selective Service

23  statute and said that it violated the Constitution.  But

24  what the court looked at is they looked at that statute,

25  which they said they were challenging on a facial basis,

1   and said how does it actually apply to the individuals in

2   this case.  And they said the only reason that it applies

3   is because they were federal workers.  And the way that

4   that challenge passed through and applied to them was

5   through a -- their employment, and challenging that

6   funneling to those plaintiffs could only be made under the

7   CSRA.

8           Taking that to this case, here, the only

9   reason why Allstates can even challenge the standards to

10  begin with is because OSHA promulgated standards pursuant

11  to what plaintiffs claim is an unconstitutional statute.

12  If OSHA never promulgated any statutes at all, Allstates

13  wouldn't have standing.  It would be an hypothetical

14  academic dispute.  The only reason we are here today is

15  because OSHA exercised that authority and actually issued

16  those standards.  And if Allstates wanted to challenge in a

17  pre-enforcement context those standards, the proper

18  mechanism was through 655(f).

19          And setting that aside, Allstates had the

20  opportunity in an actual enforcement action to bring the

21  same challenges back in 2019, and that's through a separate

22  section, which also does not flow to the district court.

23  So they had the opportunities to make these arguments and

24  to bring these challenges to the standards, and because

25  those standards are how that supposedly unconstitutional

1    statute actually applies to the plaintiffs here, that is

2    why it flows through 655(f) or the alternative enforcement

3    standard.

4                    THE COURT:  So what's wrong with the flow

5    through argument and the *Elgin* case?  How does *Elgin* get

6    distinguished, I guess, by you?

7                    MR. SHUMATE:  Your Honor, *Elgin* is an

8    important case, but I think it's important because it

9    highlights how that case is different than the case we are

10   bringing here.  We are a lot more like *Free Enterprise*.

11                   In *Elgin*, Justice Thomas was very clear.

12   The plaintiffs were challenging the agency's decision and

13   the validity of the agency's decision, which was the

14   adverse employment actions with a discharge of the federal

15   employees.  And the way that the plaintiffs were attacking

16   the validity of the agency's decision was by challenging

17   the constitutionality of the federal statute, the Selective

18   Service Act, that required the men to register for the

19   draft.  And so they were arguing that was an

20   unconstitutional basis for their discharge from federal

21   employment.  Court said, okay, when you are challenging the

22   validity of the agency's decision but you have a

23   constitutional claim that attacks the agency's decision,

24   that, like *Thunder Basin*, needs to be brought through the

25   enforcement mechanism, which, in this case, would be

1    analogous to a different statute, Section 660(a), which the

2    government can see is not applicable.  This is not an

3    enforcement context.

4              The way -- another way this case is

5    different, unlike the plaintiffs in *Elgin*, we are not

6    challenging the validity of anything the agency has done.

7    We are bringing a facial separation of powers challenge to

8    the validity of a federal statute just like the plaintiffs

9    in the *Free Enterprise Fund* and the just like the

10   plaintiffs in the *Time Warner* case, which preceded the *Free*

11   *Enterprise Fund*.  So *Elgin* is just very different.  The

12   nature of the claim is different.

13             And I think *Free Enterprise Fund* answers

14   your previous question as well, Your Honor, which is where

15   would we go to bring this claim, and the answer is nowhere.

16   There is no new standard that Allstates could challenge in

17   the Court of Appeals to bring this claim.  And *Free*

18   *Enterprise Fund* said, look, it's really an odd procedure to

19   think that Congress would have wanted a plaintiff to select

20   a standard at random and, you know, to bring a facial

21   constitutional challenge to a statute.  And Allstates

22   shouldn't have to bet the farm by violating a standard and

23   waiting for an enforcement action to bring this argument.

24             THE COURT:  So is it the Government's

25   position that you have to attack a standard in order to

1   attack a constitutionality?

2              MR. AVALLONE:  Well, Your Honor, in this

3   particular instance, because they are challenging the

4   validity of standards, the answer would be yes.

5              THE COURT:  Well, what if they weren't?  If

6   there was another constitutional challenge, would you

7   necessarily have to be attacking the standard?  Give me an

8   example, if you can.

9              MR. AVALLONE:  Well, Your Honor, we talked a

10  little bit about this in our brief how there is a

11  distinction between when you are challenging OSHA standards

12  and OSHA regulations, and because, if you are challenging

13  standards, Congress has set forth an exclusive regime that

14  needs to be followed that goes through one path.  But if

15  folks are bringing something different, challenging

16  regulations that are not standards, part of OSHA, they are

17  not subject to this jurisdictional challenge.

18             And really, it comes back down to the text

19  of the statute.  And that's why *Free Enterprise Fund* is not

20  particularly helpful here and is inapplicable, because if

21  you look at the text of that statute, the exclusive regime

22  that was at play there was for persons aggrieved by a final

23  order of the Securities Exchange Commission or a person

24  adversely affected by a rule of the Commission.  Those were

25  the two things that they -- that Congress set out that

1    needed to follow that exclusive regime.

2                    The plaintiffs in *Free Enterprise* were

3    actually challenging something different.  They were

4    challenging a separate board, the validity of the existence

5    of the board itself.  And that challenge was not

6    encapsulated by a final order of the Commission or a rule

7    of the Commission.  And it wasn't just they were

8    challenging the rules.  They were challenging every single

9    thing that board did, whether it was an investigation,

10   whether it was issuing an unfavorable report.

11                   And the unfavorable report is particularly

12   important in that case, because that is what the plaintiffs

13   in *Free Enterprise* said that actually caused them harm.

14   And when the court looked at Section 78(y), they didn't see

15   anything about a final report.  And so they said if this

16   entity cannot challenge an unfavorable report and they are

17   being harmed by it, there was no avenue for pre-enforcement

18   review for that type of report, and if they got the report,

19   there was no way for them to actually bring any challenge

20   at all.  And so what the court was doing in *Free Enterprise*

21   and what they were describing was actually a textual

22   analysis, and said, if -- if this type of claim does not or

23   actually fell within what Congress had set out, then there

24   would be no avenue for review.

25                   It's different than here, because there is

1   avenues for review, as we talked about.  They could have

2   brought a pre-enforcement review to the standards, and if

3   there is an actual enforcement action, then they can

4   challenge it like that.  But, in the SEC, the report itself

5   and the authority to issue the report was what was at

6   issue.  And if Congress interpreted Sections 78(y) as, the

7   text there, as including something like a report, then

8   there would be no avenues for judicial review at the

9   pre-enforcement or post-enforcement.

10              MR. SHUMATE:  Your Honor, *Free Enterprise*

11  *Fund* is squarely on point.  In that case, the plaintiffs

12  were bringing a facial separation of powers challenge to

13  the Sarbanes-Oxley Act.  In this case, likewise, we are

14  bringing a facial separation of powers challenge to the OSH

15  Act.

16              THE COURT:  Hold on one second, please.

17              DEPUTY CLERK:  We are having trouble

18  hearing.

19              THE COURT:  Get closer perhaps.

20                    (Brief pause.)

21              MR. SHUMATE:  I apologize.

22              Our case is squarely on point with *Free*

23  *Enterprise Fund*.  In that case, the plaintiff was bringing

24  a facial separation of powers challenge to a federal

25  statute, the Sarbanes-Oxley Act.  In this case, likewise,

1  we are bringing a facial separation of powers challenge to

2  a federal statute.

3          In *Free Enterprise Fund*, the court first

4  held that the statute at issue in that case, 78(y), did not

5  explicitly bar the district court from exercising

6  jurisdiction.  So too here, we do not fall within the plain

7  terms of the statute.  And second, the court looked at

8  whether 78(y) implicitly barred district court jurisdiction

9  and walked through the Thunder Basin factors, which we'll

10 get to in a minute.

11         But I think it's important to think what was

12 the relief that was being requested in *Free Enterprise*

13 *Fund*.  They were not challenging the enforcement action.

14 The plaintiffs were challenging the statute.  They were

15 seeking relief against the board because of the

16 unconstitutionality of the statute.  And they sought an

17 injunction that would prevent the board from exercising the

18 power that Congress had granted to the board.

19         So, too, here.  We are asking the Court for

20 a declaratory judgment that the statute is unconstitutional

21 and an injunction that prevents OSHA from enforcing the

22 statute, not any particular standards.  So we think *Free*

23 *Enterprise Fund* is squarely on point.

24         THE COURT:  Are you asking to bar the

25 enforcement of any aspect of the statute?

```
1              MR. SHUMATE:  Yes, Your Honor.  We have

2    asked for an injunction that would prevent OSHA from

3    enforcing the statute, and, in particular to our complaint,

4    we've pointed to Section 5(a)(2) and Section 17 of the OSH

5    Act.  This is at paragraphs 114 and 115 of the complaint.

6    Those are the provisions of the OSH Act that, number one,

7    require Allstates to comply with OSHA's safety standards.

8    And Section 17 authorizes OSHA to impose penalties against

9    employers like Allstates that fail to comply.

10             THE COURT:  So are you asking the Court to

11   preclude OSHA from enforcing any other standards or

12   citations they issued?  Anything that happened in the past

13   before the date of this Court order?

14             MR. SHUMATE:  No, Your Honor.  Our request

15   for relief is purely prospective.  Declaratory judgment is

16   prospective, entering injunction is prospective in that it

17   would prevent OSHA in the future from enforcing the

18   statute.

19             THE COURT:  We have somebody on?

20             DEPUTY CLERK:  Hang on one second.

21             THE COURT:  Okay.

22             So what would happen to a pending citation

23   that was being disputed at the time I issue an order, would

24   that put a halt to that particular matter?

25             MR. SHUMATE:  I believe it would, Your
```

1  Honor, to the -- if OSHA had already taken the enforcement

2  action, I think the penalty would remain in place to the

3  extent that OSHA had already enforced the statute.  At that

4  point, the employer could review administratively within

5  the Department of Labor, so I don't think the injunction

6  would affect a pending challenge to a citation that had

7  been issued prior to any injunction the court issues.

8            But with respect to the plaintiff in this

9  case, there is no -- we are not challenging any past

10  enforcement or citation.  There is nothing pending against

11  Allstates, the plaintiff in this case.

12            THE COURT:  So what would have happened if

13  your client did get a citation, and as part of that, it

14  chose to challenge not only the citation but the

15  constitutionality of the statute?  Would that end up in

16  district court or elsewhere?

17            MR. SHUMATE:  Likely not, would not end up

18  in district court.  I think the government's position would

19  be that, in that case, would be a lot like *Elgin*, because

20  all -- if there were an enforcement action and Allstates

21  wanted to challenge the validity of that enforcement action

22  on the basis that the statute is unconstitutional,

23  Allstates would have to do that through the procedures

24  under Section 660(a), which governs a judicial review

25  enforcement.  And that, the government has said that, that

1  scheme is not at issue in this case.  But that ultimately

2  would go to the Court of Appeals, not federal district

3  court.

4              THE COURT:  So it seems to me that if

5  someone, generally speaking, is challenging the

6  constitutionality of the statute, a facial challenge, that

7  ought to start at district court, not be brought into a

8  federal appellate court or elsewhere.  It certainly

9  wouldn't be something OSHA would tackle, right?

10             Yes?

11             MR. AVALLONE:  Your Honor, I assume you are

12  looking at me?

13             THE COURT:  I am.

14             MR. AVALLONE:  Okay.  So I think that

15  there's -- there's two points there.  If you take a step

16  back.

17             THE COURT:  There are.

18             MR. AVALLONE:  Take a step back.  If you

19  focus on the relief that Allstates is seeking, Allstates is

20  asking the Court, and, if I heard correctly, to hold

21  invalid all of the safety standards that were issued under

22  the statute that they've claimed as unconstitutional.

23             THE COURT:  Is that what you are asking?

24             MR. SHUMATE:  No, Your Honor.  We are asking

25  for an injunction that says that Allstates doesn't have to

1    comply with the statute because OSHA can't take enforcement

2    action under the statute.

3                MR. AVALLONE:  And, Your Honor, it sounds

4    like that's a preenforcement challenge.  If you just take a

5    look at what they are practically asking for, they are not

6    challenging an enforcement, they are asking -- they are

7    coming into this Court before enforcement is taking place,

8    asking for an injunction to stop future enforcement based

9    on these standards.  That's a pre-enforcement challenge.

10                And if you take a look at the scope of

11   relief requested, here, as we are just talking about, they

12   are challenging the statute that allows OSHA to issue

13   certain safety standards.  If you take a look at what they

14   were challenging in *Free Enterprise* is different.  They

15   were challenging the existence of the board.  They were

16   challenging the ability of that board to investigate, to

17   issue citations, to issue reports.

18                Here, if plaintiffs get everything that they

19   want, OSHA is going to continue doing inspections.  They

20   are going to continue issuing citations.  They are going to

21   continue doing everything else that they are already

22   authorized to do.  The only thing that's going to be

23   stopped and enjoined is the small sliver of standards,

24   safety standards, that plaintiffs have challenged.

25                And that's the difference between this case

1   and *Free Enterprise*.  And that's why this case is more like

2   *Thunder Basin* and *Elgin*, where, what they are actually

3   asking for, the practical effect of what they are seeking,

4   it falls within that exclusive regime and within the text

5   of that statute.

6           And so, Your Honor, to bring it back to your

7   original question was if they were bringing a question of

8   unconstitutionality, shouldn't it be brought in federal

9   court.  Well, if they brought a proper pre-enforcement

10  action, which Congress said if you are going to challenge

11  the validity of standards, there is a time.  It's a window.

12  We have to bring it within 60 days.  It does go through

13  federal court.  It goes through Federal Court of Appeals.

14  And it's the way -- the way that Congress set that up is to

15  jump start and make sure there is Court of Appeal's review

16  quickly and, if necessary, that they are on their way to

17  the Supreme Court.  Because uniformity in national

18  standards, if you take a look back at what Congress was

19  discussing when they were passing the OSH Act, uniformity

20  in national standards was very important.  And they did not

21  want to have piecemeal injunctions in many different

22  districts around the country.  They wanted to fast track

23  these sorts of rules so they could get reviewed and applied

24  uniformly on a national level.

25           THE COURT:  But they are not asking for a

```
1    piecemeal evaluation of a past standards, are they?  They
2    are not asking that it be different in one place or
3    another.  They are saying the whole thing is improper
4    because there is not the proper -- there was the improper
5    delegation of authority by Congress to OSHA.  That's
6    different.
7                    MR. AVALLONE:  Well, Your Honor, I don't
8    think -- I don't think it necessarily is different because,
9    Your Honor, if let's say that they have brought -- a
10   different entity brought a different challenge in a
11   different district court and that district court ruled in a
12   way that was different than you ultimately rule.  At that
13   point, then, OSHA is facing conflicting injunctions across
14   the country and that was a situation that Congress was
15   trying to avoid by fast-tracking review of standards into
16   the Court of Appeals.
17                   THE COURT:  So you keep taking about
18   standards, the other side keeps talking about the statute.
19   I'll let you comment on what you just heard.
20                   MR. SHUMATE:  Your Honor, my friend
21   mentioned practical effects.  Really, I think let's go back
22   to the relief in Free Enterprise Fund.  This is page 487 of
23   the opinion.  The plaintiffs in that case were seeking,
24   quote, a declaratory judgment that the board is
25   unconstitutional and an injunction preventing the board
```

1   from exercising its powers, end quote.  Preventing the

2   board from exercising its powers meant that, as a practical

3   matter, the facial constitutional challenge in that case

4   would impact the board's ability to enforce its own

5   standards.

6           So, too, here.  If the Court grants our

7   request for relief, the Court would enter a declaratory

8   judgment, statute is unconstitutional, and enjoin the

9   board's -- OSHA from exercising its powers.  Just because

10  there may be some collateral effect of the board's

11  injunction doesn't mean we are any different from *Free*

12  *Enterprise Fund*, because that was also true in *Free*

13  *Enterprise Fund*.

14          If you grant the request for relief in a

15  facial challenge to the statute, it will affect what OSHA

16  can do and what OSHA can enforce in the future, but it

17  doesn't change the fact that we are not challenging the

18  validity of any particular OSHA standard.  We are not

19  saying OSHA made a mistake in passing that OSHA standard in

20  1980 because there was no substantial record of evidence or

21  the reasoning wasn't good enough under the APA.  That's far

22  afield from the nature of this case.  That's what Congress

23  wanted to channel in the Courts of Appeals where you have a

24  new standard, you know, everybody across the country is

25  affected by it, let's not have conflicting decisions by the

1    First Circuit and Third Circuit, let's put it all in one

2    Court of Appeals.

3                    That's very different than the kind of case

4    you have in front of you today, which is the facial

5    challenge to the statute.  There's no other case like this,

6    as far as I'm aware of, you know, pending in any federal

7    district court.  So there is no concern about conflicting

8    injunctions or declaratory judgments.

9                    THE COURT:  Talk about *Thunder Basin*, either

10   side, if you wish to.  That's question number 2.

11                   MR. SHUMATE:  Your Honor, *Thunder Basin* does

12   not apply for four reasons.  Maybe I'll pause after each

13   reason.

14                   The first is that there is no opportunity

15   for initial review by the agency.  The Sixth Circuit in the

16   case called *Jones Brothers* talks about *Thunder Basin* in

17   that line of cases and says, okay, it applies in a

18   situation where a plaintiff has the opportunity to seek

19   relief administratively from the agency first where there

20   is an enforcement action like in *Thunder Basin*, like in

21   *Elgin*.  And what Congress wanted is for those, you know,

22   challenges to the enforcement action to proceed through the

23   agency and then the Court of Appeals because, you know

24   what, there might be a chance you win for the agency and

25   the Court doesn't even need to address the question.

1              That's not this case for a couple of

2    reasons.  The government has conceded that the enforcement

3    provision of the statute, Section 660(a), is inapplicable.

4    So we don't have the opportunity to challenge an

5    enforcement action before the OSHA review board.  And

6    Section 655(f), which we've been talking about most of this

7    morning, channels cases directly in a Court of Appeals, not

8    to OSHA.  So, as a threshold matter, that's a telltale sign

9    that the *Thunder Basin* line of cases doesn't apply because

10   there is no opportunity for OSHA -- sorry, for Allstates to

11   seek administrative review of its constitutional claim.

12              The second reason *Thunder Basin* doesn't

13   apply, agency expertise.  For similar reasons, there is no

14   opportunity for OSHA to bring its expertise to bear on this

15   case because we can't get our claim, our constitutional

16   claim, before OSHA.  There is no enforcement action, and

17   655(f) channels cases to the Courts of Appeals.

18              *Free Enterprise Fund* also says that agencies

19   don't have any expertise when it comes to administrative

20   law claims, certainly not separation of powers challenges

21   to the statute, and in the non-delegation context, agency

22   expertise is really truly irrelevant after the Supreme

23   Court's decision in Whitman said agencies can't narrow a

24   delegation of power from Congress because that itself is

25   the exercise of legislative power.  So that's the

1    second reason.

2           The third reason *Thunder Basin* doesn't apply

3    is because our constitutional claim is wholly collateral to

4    the review scheme, which here, is embodied in two

5    provisions, 655(f) and 660(a).  655(f) doesn't apply for

6    reasons we've discussed today.  We are not challenging the

7    validity of any OSHA standard, which we've discussed.  And

8    second, 660(a) doesn't apply because this is not an

9    enforcement action.  So our claim is wholly collateral to

10   the scheme that Congress set up that it wanted to channel a

11   type of judicial review scheme.

12          Fourth and final, we've already touched on

13   it a little bit, we would be foreclosed from bringing our

14   constitutional claim in any court if we can't bring this

15   claim before you today in this Court because *Free*

16   *Enterprise Fund* kind of rejected both of the proposals that

17   the government has made.  They said we should have

18   challenged one of the standards that had been enacted over

19   the last 50 years.  *Free Enterprise Fund* says that's a

20   really odd procedure for Congress to set up for a facial

21   constitutional challenge to a statute where these are the

22   type of cases that federal district courts consider all the

23   time.

24          And then second, the court said we don't --

25   plaintiff doesn't have to bet the farm and invite that

```
 1   enforcement action to bring a constitutional claim through
 2   the administrative review process.  And so if we can't
 3   bring this claim here, there is nowhere else Allstates can
 4   go.  So for those four reasons, that's why *Thunder Basin*
 5   does not apply.
 6                THE COURT:  Does that take care of *Thunder*
 7   *Basin*?  Any one or more of those?
 8                MR. AVALLONE:  Well, Your Honor, let me take
 9   a step back.  I want to take a step back and say I think we
10   all agree between the parties here.  We agree that district
11   courts generally have jurisdiction over federal questions.
12   And both parties appear to agree this Congress can limit or
13   channel that jurisdiction, and that's really why *Thunder*
14   *Basin* is important, because *Thunder Basin* sets out that
15   even if Congress does not explicitly set it out, if they
16   created such a comprehensive review scheme in the statute,
17   that courts should treat it as an exclusive review scheme.
18                And, in fact, most of the conversations
19   we've been having so far this morning have just assumed
20   that Section 655(f) is an exclusive review scheme.  And I
21   believe that that's -- the parties agree on that, and I'm
22   sure that counsel for plaintiffs will correct me if I'm
23   wrong.
24                THE COURT:  Well, let's ask.  Is 655(f) a
25   comprehensive review scheme?
```

1  MR. SHUMATE:  Yes, it is for the types of

2  claims that fall within the text of the statute and for

3  reasons we discussed.  We disagree whether this claim falls

4  within that exclusive channel.

5  MR. AVALLONE:  And so, Your Honor, that was

6  going to be my exact next point is that really the heart of

7  this dispute is whether this claim falls within the text of

8  that statute.  And that's really why I think *Thunder Basin*

9  is important, because it sets out the principle that I

10  think that we all agree on, that 655(f) sets out and

11  excludes the review scheme.

12  THE COURT:  Assume, for a moment, that I

13  decide it does not fall within subsection (f), is it okay

14  for this case to proceed before me?

15  MR. AVALLONE:  Well, Your Honor, I think

16  that is -- this is the key question.  Does it fall within

17  655(f).  If it does, then this Court does not have

18  jurisdiction.  If it falls outside, then, Your Honor, I

19  think it would fall within the 28 U.S.C. Section 1331.

20  THE COURT:  Thirty-one.  I thought you might

21  say that.  And if it falls within that section, then what?

22  MR. AVALLONE:  Well, then Your Honor would

23  have jurisdiction.  So it really comes down to the text of

24  655(f).  Does this type of claim fall within that?

25  THE COURT:  And so to interpret 655(f), are

there any other subsections or other statute sections that
would help me understand the scope of 655(f)?

MR. AVALLONE:  Sure.  I think that taking
the approach that as you mentioned Justice Thomas did in
*Elgin* is helpful.  And the first place to look, as we do
interpreting statutes, is in the text itself.  It does not
make any exceptions for facial constitutional challenges.
If you are challenging the validity of a statute, then it
falls within the scope of that.

And going back to the *Thunder Basin*, what
*Thunder Basin* talked about for avenues for judicial review,
it's whether those avenues for judicial review exist at
all.  If, and here they do.

Congress has the authority to set out and
channel those challenges in 60 days to the Courts of
Appeals.  If Congress had said -- and one way to think
about this is if you take a look at statute and took out
the jurisdiction stripping part of it, would this claim
naturally fall within the ambit of that.  Any person who
may be adversely affected by a standard issued under this
section may, at any such time, challenge the validity of
such section and seek judicial review of such a standard.
If that were the statute, it would seem natural that this
type of claim would fall within the ambit of that.

And so that, really, just because Congress

```
1   set a time limit of 60 days and a statute of limitations
2   and a jurisdictional challenging doesn't mean it foreclosed
3   all avenues of judicial review.  It gave them the judicial
4   review.  Allstates decided not to take that opportunity
5   when the standard, most recent standard less than two years
6   ago -- I believe Allstates was in business then -- decided
7   not to take that opportunity.
8               THE COURT:  I think what the other side
9   would say to that is we are not arguing an adverse fact or
10  review of a standard.  We are arguing a standardless
11  delegation of authority from Congress to OSHA with its
12  language.  And they are challenging the congressional
13  action, not the OSHA specific action.  Is that a difference
14  with a distinction or not?
15              MR. AVALLONE:  Your Honor, I don't believe
16  it is.  And I think one way that might be helpful is
17  counsel for plaintiffs was talking about *Free Enterprise*
18  and went back to the language of the injunction of *Free
19  Enterprise* and it enjoined the board from exercising its
20  powers.  Full stop.  All of them.  All of the powers.  And
21  that went far beyond the ability related to a final order
22  of the commission or a rule of the commission, and that's
23  what was the exclusive regime at issue in that case.
24              Here, if Your Honor issues that injunction,
25  it's only going to affect safety standards and only the
```

```
1   specific safety standards that plaintiffs have identified.

2   It's not going to have any impact beyond those other --

3   beyond those safety standards.

4              As I mentioned before, OSHA is still going

5   to be able to conduct inspections.  They are still going to

6   be able to issue citations.  If Your Honor issues an

7   injunction, they just will not be able to issue citations

8   related to specific standards.  And the scope of that

9   requested relief is really what brings this within that

10  language of 655(f).

11             THE COURT:  Comment?

12             MR. SHUMATE:  So, Your Honor, I think this

13  case is getting easier for you to decide, because I think

14  my friend is placing so much emphasis on the text of 655(f)

15  alone.  And what I had taken him to be arguing is that our

16  claim falls explicitly within the terms of 655(f).  You

17  should decide that question.  We think we have the better

18  interpretation of the statute.

19             What I don't hear my friend arguing, at

20  least as of yet, is that our claim implicitly falls within

21  the statute and the review scheme.  And the only reason

22  *Thunder Basin* would be relevant is if the government wants

23  to make an implicit argument.  And so far, all I've ahead

24  is an explicit textual argument consistent with their

25  briefing that our claim falls within the explicit text of
```

1    655(f).

2              If you disagree with that, you don't even

3    need to get to the *Thunder Basin* analysis, because I think

4    *Free Enterprise Fund* makes clear that there are two

5    potential arguments.  There is explicit preclusion, which

6    is what the government is arguing here, or implicit

7    preclusion under *Free Enterprise* or under *Thunder Basin*.

8    And as of yet, we have not heard an argument from the

9    government that even if our claim falls outside the text of

10   the statute, the Court should nonetheless bar our claim

11   under *Thunder Basin*.

12             THE COURT:  Is that what you are saying?

13             MR. AVALLONE:  Your Honor, I just want to

14   clarify they use explicitly and implicitly.  I think there

15   might be a bit of confusion.  When we talk about *Thunder*

16   *Basin* and explicit exclusion, we are talking about when the

17   statute says use the word like "only" or the district court

18   "shall not have jurisdiction."  Here, 655(f), if you take a

19   look at it, it says that a petitioner may bring a claim

20   within the Court of Appeals.  It does not explicitly say

21   that this Court does not have jurisdiction.

22             Under the *Thunder Basin*, the implicit

23   jurisdictional stripping, that is what is important here

24   under this section, because if you read that 655(f), the

25   natural implication, the implicit implication is that only

1    Courts of Appeals have that authority.  And so I think -- I
2    think we agree on that.
3                     And the government, and please correct, the
4    government is arguing that if it falls within the text,
5    that it is -- it's part of that exclusive jurisdiction or
6    exclusive regime, if it falls outside the text, we are
7    not -- we are not saying that it falls within the exclusive
8    regime.  So, once again, I think we agree on something
9    else.
10                    MR. SHUMATE:  So now I'm confused what the
11   government's argument is, Your Honor.  I seem to have heard
12   the concession that the statute doesn't explicitly bar the
13   court from exercising jurisdiction.  That's certainly good
14   news to my ears.  If the statute doesn't explicitly bar our
15   claim, the court has jurisdiction under 1331.  Now I seem
16   to hear an implicit argument that even if our claim
17   doesn't, you know, squarely fall within the text of the
18   statute, you should nonetheless bar our claim from court
19   because of the *Thunder Basin* factors.
20                    And so we have yet to hear from the
21   government about whether those factors apply, but I've
22   heard some inconsistent -- inconsistency in the
23   government's position about whether our claim falls within
24   the square text of the statute or not, and for the reasons
25   we've discussed, we don't think our claim falls within the

1   text of the statute and that should be it.

2           THE COURT:  I'm looking at the questions

3   submitted.  I think we've already walked through one

4   through five, but as you take a look at those questions,

5   tell me if you have anything to add.

6           MR. SHUMATE:  I think we've covered

7   everything I had intended to cover under questions one

8   through five, Your Honor.

9           THE COURT:  I want to talk about the EPA

10  case, *Whitman*, which the government relies on somewhat.  If

11  you've got a comment on how that case differs from this

12  case, if it does.

13          MR. SHUMATE:  Your Honor, I take it you are

14  shifting to the merits?

15          THE COURT:  Yes, I have.  Sorry.

16          MR. SHUMATE:  That's okay.  Yes, so.

17          THE COURT:  I thought we ought to get there

18  at some point.

19          MR. SHUMATE:  Yes, so in *Whitman*, the court

20  upheld a delegation from Congress to the EPA to regulate

21  greenhouse gas emissions requisite to the public health.

22  And so we've distinguished that gram of authority from the

23  OSHA delegation in our case, because the scope of the

24  delegation to OSHA is far broader.  The delegation to OSHA

25  covers all employers.

1          So the government cites to a number of cases

2     where the Supreme Court has upheld really the narrow

3     delegations to agencies with maybe some broad language like

4     public interest, but those were very targeted and specific

5     delegations to particular agencies to regulate particular

6     portions of the economy.

7          With the OSH Act, however, Congress has

8     delegated immense authority to OSHA to regulate the entire

9     national economy.  All employers across the country.  It

10    affects millions of employers, millions of employees across

11    the country in language that is indefinite and has no

12    intelligible principle.  As we've explained, reasonably

13    necessary or appropriate can mean anything OSHA wants it to

14    mean.

15          And another important principle from

16    *Whitman*, Your Honor, to not forget, is that the court

17    cannot defer in any way or consider OSHA's attempt to

18    narrow the delegation from Congress.  I think it's quite

19    telling that OSHA has recognized that there is a

20    non-delegation concern with the statute.  They don't agree

21    with us on the merits, of course, but they recognize, as

22    the DC circuit has recognized and as Justice Rehnquist

23    recognized 40, 50 years ago, this is a very broad

24    delegation.  And pre-*Whitman*, OSHA attempted to narrow the

25    scope of that delegation by saying we are only going to

1　apply it this way.  Here's how we interpret that very broad

2　language.  And the DC circuit in 1994 said that's fine.

3　*Whitman* comes along I think in 2000 and says an agency

4　cannot narrow the scope of a delegation in power because

5　that, itself, is an exercise of legislative authority.  So

6　that's another reason why we think the OSHA statute is

7　broader than the EPA statute in issue in that case.

8　　　　　　　　THE COURT:  Are we delegating legislative

9　power here with OSHA and its ability to affect so many with

10　so many regulations that cover a broad scope of activity?

11　　　　　　　　MR. AVALLONE:  No, Your Honor.  Before we

12　jump in here, I just want to touch back.  Go back to

13　question number three.

14　　　　　　　　THE COURT:  Sure.

15　　　　　　　　MR. AVALLONE:  Before we move back onto the

16　merits.

17　　　　　　　　THE COURT:  Sure.

18　　　　　　　　MR. AVALLONE:  Your Honor, you asked

19　plaintiffs if there were any federal courts that had

20　examined the merits of a constitutional challenge to OSHA

21　and, notably, they came back with a number of cases and

22　none of those cases identified something similar here.

23　　　　　　　　THE COURT:  And you are not going to give me

24　one either, are you?

25　　　　　　　　MR. AVALLONE:  We looked, Your Honor, and we

1   have all, likewise, could not find any.  So moving --

2               THE COURT:  So maybe that means there is no

3   constitutional problem with OSHA?

4               MR. AVALLONE:  That could -- well, it could

5   mean that.  Actually, if you take a look back at all the

6   other times that folks have challenged OSHA's

7   constitutionality, which, Your Honor, we have pointed out

8   in our brief has happened two times throughout history,

9   every single court has come out and said that the

10  delegation of authority was constitutional.

11              And particularly, you know, Your Honor,

12  plaintiffs spent a lot of time focusing on some old DC

13  circuit precedent where the DC circuit, at that time, was

14  applying too strict a standard for non-delegation, and the

15  Supreme Court in *Whitman* course corrected and admonished

16  the DC circuit and said you are holding the agencies to too

17  high -- too high of a level.  We don't need that level of

18  technical precision that you have historically tried to

19  apply in your non-delegation doctrine cases.

20              And tellingly, after *Whitman*, after the

21  Supreme Court course corrected, the DC circuit analyzed

22  this very same question and found that, you know, we quoted

23  it a few times in our brief because it was very stark.

24  They found that one cannot plausibly argue that 29 U.S.C.

25  Section 652(8) is reasonably necessary or appropriate to

1    provide safe or healthful employment and places of

2    employment standard is not an intelligible principle.

3              So I think although *Whitman* was an important

4    case for non-delegation principles, for our purposes here,

5    because we've been talking a lot about the DC circuit

6    precedent, once *Whitman* came out and clarified exactly what

7    the standard was, the DC circuit realized that previously

8    they had been applying an incorrect standard.

9              THE COURT:  So it sounds like the DC circuit

10   would disagree with your articulation that the text lacks

11   an intelligible principle?

12             MR. SHUMATE:  Yes, Your Honor.  The DC

13   circuit would disagree with this claim, recognize that that

14   decision is binding in the DC circuit.  We don't think it's

15   even persuasive here, Your Honor.  That case had I think

16   just one, maybe two paragraphs of analysis because it was

17   the last claim in the challenge to the validity of an OSHA

18   standard.  And the principle arguments in that case were

19   statutory, you know, challenges to the validity of the OSHA

20   standard.  And then the last claim of the case was the

21   non-delegation challenge.  And the court simply cited to

22   all of the prior cases from the Supreme Court upholding

23   very broad delegations.

24             We acknowledge that that has happened

25   before.  We acknowledge that this is, you know, no court

1   has ever held that the OSHA statute is a violation of the

2   non-delegation doctrine; however, a number of justices and

3   courts have recognized that this delegation is very broad

4   starting with Justice Rehnquist.  Four Justices of the

5   Supreme Court currently on the court have expressed an

6   interest in reconsidering the non-delegation doctrine since

7   that DC circuit decision in 2011, and we think this is the

8   broadest delegation, broader than anything that the Supreme

9   Court has ever considered, Your Honor.

10              So we recognize that the Supreme Court has

11  upheld a number of very broad delegations since *Schechter*

12  *Poultry*, since *Panama Refining*.  We think that OSHA Section

13  6(b) is much closer to the statutes at issue in *Schechter*

14  *Poultry* and *Panama Refining*, and National Industrial

15  Recovery Act, which gave the President broad authority to

16  regulate the national economy whenever he thinks it

17  appropriate.  That's very similar to the broad delegation

18  to OSHA to regulate all employers in the country so long as

19  they think a safety standard is reasonably necessary or

20  prohibited.  Whatever they think is good policy, OSHA can

21  do, and --

22              THE COURT:  So are you quibbling with the

23  safety standard or the necessary language or both?

24              MR. SHUMATE:  So we are only challenging

25  safety standards which are promulgated by OSHA under 6(b),

1   and the only intelligible principle that the government can

2   point to is the definitional provision which says

3   reasonably necessary or appropriate.

4           We have been clear that we are not

5   challenging the validity of a delegation to promulgate

6   health standards, which comes from Section (b)(5), which

7   has a different delegation of power of OSHA.

8           So the only intelligible principle the Court

9   needs to review is reasonably necessary or appropriate.

10  And as we've explained in the briefing that disjunctive is

11  important.  It's "or."  So even if OSHA finds that the

12  safety standard is not reasonably necessary, they can say,

13  oh, well, we still think it's appropriate, and appropriate

14  is about as broad a delegation as you can find.

15          THE COURT:  Is there another case that deals

16  with the delegation with a standard of appropriate?

17          MR. SHUMATE:  None comes to my mind right

18  now, Your Honor.  I'm sure the government may have an

19  answer.  Nothing comes to mind.

20          THE COURT:  He's looking.

21          MR. AVALLONE:  It's true, Your Honor.  I

22  believe that we had cited to, on -- in our reply, which

23  filed at ECF 26, page 14, we pointed to at least one

24  other -- one other provision that used that word,

25  "appropriate."  And, Your Honor, we would also consider the

1   word "adequate" that was used in *Whitman* as something

2   similar to appropriate.

3                   And there is, in addition to the text of the

4   statute, the Supreme Court has instructed courts, when

5   analyzing non-delegation issues, to take a look at the

6   structure and history of the act.  And here, if you take a

7   look at the purpose of the act, Congress was very explicit

8   that it was concerned with personal injuries and illnesses

9   arising out of work situations.  And actually, if go back

10  and you take a look back at legislative history, there is

11  an entire report where Congress was talking about how

12  industrial accidents were getting worse on a per capita

13  basis, and they considered this to be a national emergency.

14  And the purpose of the OSH Act was to, and this is in the

15  text of the statute, to assure so far as possible every

16  working man and woman in the nation safe and healthful

17  working conditions.

18                  And so, Your Honor, when analyzing an

19  intelligible principle, one of the things the Court is

20  supposed to look at is the purpose of the statute.

21  Congress codified the purpose of the statute.

22                  THE COURT:  So you would say reasonably

23  necessary or appropriate to achieve safety and healthy

24  situations or something like that?

25                  MR. AVALLONE:  Well, Your Honor, just as a

1   threshold matter, we don't believe that the -- that phrase

2   reasonable and appropriate is the only intelligible

3   principle that Congress provided.  That's plaintiff's

4   position.  Plaintiff's position stated that only that

5   phrase, that is the only thing that you should be looking

6   at, okay.

7             Our position is that is not the only

8   intelligible principle that Congress set out.  They

9   actually set out a number of them, as we laid out in our

10  brief, including the purpose.

11            And so if the Court was looking to see if a

12  standard wasn't consistent with the intelligible principle,

13  they can go back and look, and if the standard did not

14  advance the safe and healthful working conditions, it would

15  not be consistent with the intelligible principle that

16  Congress set out.

17            THE COURT:  What's wrong with that

18  limitation?  Doesn't that put a bit of context to what

19  might otherwise be argued is a nebulous of broad word or

20  words?

21            MR. SHUMATE:  No, Your Honor.  I don't think

22  it is, because the purpose of the statute just tells OSHA

23  what they can do.  It doesn't limit what they can do.  The

24  only limitation on that broad delegation of power to issue

25  safety standards is that they have to be reasonably

1    necessary or appropriate.  But the broad delegation is to

2    promulgate safety standards to ensure, you know, safe and

3    working -- safe and healthful working conditions.  That's

4    the delegation.  But the only limiting principle is

5    reasonably necessary or appropriate.  So I don't think the

6    purpose here helps the government.

7              THE COURT:  But doesn't the delegation,

8    whatever may be necessary or appropriate, have to fall

9    within the delegation of safety and health, yes?

10             MR. SHUMATE:  Yes, it has to fall generally

11   within the framework of it has to achieve safety.  In fact,

12   the Supreme Court has set kind of a threshold finding that

13   OSHA has to make is that its rule will -- has to make a

14   finding that current conditions are unsafe before it

15   promulgates a safety standard.  But once OSHA makes that

16   threshold finding, OSHA can do anything it wants to make

17   conditions safer so long as they are reasonably necessary

18   and appropriate.  That means OSHA could bankrupt entire

19   economies, industries, and there is nothing in the

20   reasonably necessary or appropriate standard that would

21   prevent OSHA from doing that.

22             THE COURT:  Tell me how it could bankrupt an

23   entire industry.  Is it because of the penalty it might

24   impose or do you have another example?  So if there is a

25   particular standard that OSHA believes is necessary or

1  appropriate for the health and safety of working man and

2  woman and the cost of that is enormous, it's impermissible?

3              MR. SHUMATE:  We would argue, well, I don't

4  think there is any reason OSHA would say that they can --

5  let me back up.  I think there could be a situation where

6  OSHA passes a standard that is so costly, so burdensome

7  that it bankrupts and puts a company like Allstates out of

8  business.

9              For example, Allstates works in high heat

10 environments.  So let's say OSHA were to promulgate a new

11 standard that says employers can't have employees work in

12 environments where the temperature exceeds 90 degrees.  Is

13 there anything reasonably necessary or appropriate that

14 would prevent OSHA from initiating, adopting that standard?

15 Probably not.  But a standard like that would put Allstates

16 out of business because the cost of compliance would be

17 impossible.  Allstates could not engage in its work.  Not

18 Allstates -- OSHA has not promulgated that standard, but

19 under the government's view of the statute, they certainly

20 could, because that's -- that standard would ensure

21 employees are working in a safer environment.  Less than

22 90 degrees is a lot safer than over a hundred degrees.  But

23 that would severely impact Allstates' business.

24              THE COURT:  They could appeal that.

25              MR. SHUMATE:  In the Court of Appeals.

```
 1                    THE COURT:  Right.

 2                    MR. SHUMATE:  Right, but the argument would

 3    be that OSHA exceeded its statutory authority or acted

 4    arbitrarily and capriciously or there is not evidence on

 5    the record and maybe Allstates wins that, but we shouldn't

 6    have to wait until that rule comes down to bring our

 7    constitutional claim.  It should be in this Court.

 8                    THE COURT:  Comment?

 9                    MR. AVALLONE:  Sure, Your Honor.  I just

10    want to point out that there were two critical points that

11    plaintiffs made that I want to make sure I emphasize.

12                    First, that the Supreme Court has already

13    found that the word "safe" in the statute requires OSHA to

14    make a threshold finding of significant risk.  And that's

15    from the -- I think it's Industrial Union Department

16    AFL-CIO versus American Petroleum Institute.  And that's a

17    case from 1980.  So the Supreme Court has already said the

18    word "safe" requires OSHA to make a threshold finding.

19    That's one boundary on OSHA's authority.

20                    The second is the reasonably necessary or

21    appropriate, the Supreme Court also held that that requires

22    technical feasibility.  They can't require something that's

23    impossible.

24                    And so these are the bounds that the Supreme

25    Court has already held that bind OSHA.
```

```
 1                   And the third point I want to make is if you

 2    heard about the -- listening carefully, the hypothetical

 3    harm here is that OSHA might promulgate a standard that is

 4    so onerous that it could bankrupt an industry.  Your Honor,

 5    the way to challenge that is Section 655(f).  If there is a

 6    standard promulgated that is going to do something like

 7    that, that is the way it challenge that.  And to be clear,

 8    that is not the only way that an industry can get relief.

 9    They can also seek a variance.

10                   So, for example, Allstates, in their papers,

11    has discussed how, in their view, they have safety

12    procedures that they think are as safe or more protective

13    of workers.  There is a way that they can petition OSHA and

14    say the way that we do it is better.  We would like to do

15    that and not be subject to these standards that we think

16    actually put our people at risk.  There is a process for

17    that.

18                   And so just to bring it all back, I think

19    that's -- those are the three main points I would make in

20    response.

21                   THE COURT:  I think I've run through my

22    notes.  Other than maybe question six.  If I have

23    jurisdiction, is there a right to an interlocutory appeal?

24                   MR. SHUMATE:  So no, Your Honor.  If you

25    find jurisdiction, that means you've denied the
```

```
1    government's motion to dismiss.  That would not be an
2    immediately appealable order.  In fact, the parties have
3    crossed moved for summary judgment, so if you find
4    jurisdiction, the appropriate next step would be to address
5    the merits, as we've discussed, and grant summary judgment
6    to the plaintiff or defendant.  And then enter final
7    judgment and the losing party could take an appeal to the
8    Sixth Circuit.  We think that would be the most efficient
9    course here rather than having, you know, piecemeal appeals
10   on jurisdiction and potentially remand to consider the
11   merits.  We would encourage the Court, in its opinion, to
12   address both the jurisdiction and the merits and the, you
13   know, losing party can take an appeal.
14            THE COURT:  So is there anything further for
15   me to be educated or anything else to place on the record
16   if the summary judgment is addressed as opposed to the
17   motion to dismiss on jurisdiction?
18            MR. SHUMATE:  I don't think, Your Honor, we
19   have a need for further briefing, because we both put our
20   best foot forward on the merits.  We've briefed the
21   jurisdiction, merits and remedy, so the Court should enter
22   summary judgment for one party or the other.  We encourage
23   the Court to enter summary judgment for us finding
24   jurisdiction, striking down the delegation, and grant --
25   finding we prevail on the merits and then granting the
```

1 declaratory judgment and request for an injunction that we

2 have requested.

3         THE COURT:  Other than the comment about

4 finding in his favor, Zach, do you agree with the outline

5 he just proposed?

6         MR. AVALLONE:  Generally, yes, Your Honor.

7 We also would just note there is a process for a certified

8 question for appeal that it might be appropriate in this

9 case.  There's a number of cases that are pending before

10 the Supreme Court that address the similar questions, the

11 jurisdictional question.  There is the *Cochran* case out of

12 the Fifth Circuit.  There is also a case, *Axon versus the*

13 *Federal Trade Commission* out of the Ninth Circuit.

14         So is the decision of whether to seek a

15 certified interlocutory appeal for defendants, that's the

16 Solicitor General's decision, so I can't certainly say

17 whether or not we would pursue such a thing, but that would

18 be the avenue.  But we agree with plaintiffs that there is

19 no right to interlocutory appeal.

20         THE COURT:  Well, given the number of times

21 that Brett cited to Gorsuch, I expect that you think he

22 might be favorable to your arguments.  You don't have to

23 answer.

24         MR. SHUMATE:  I would hope so, Your Honor,

25 but you never know.

```
 1                    THE COURT:  All right.  If you have anything

 2   else for me to consider, please feel free to lay it on the

 3   record now.  I'll give you sort of a last chance.  In fact,

 4   let me do this.  I've done this before.  Give this a couple

 5   minutes of thought.  I'll give each side the opportunity to

 6   ask the other side a question.  Give it some thought.  It

 7   doesn't have to be right away.

 8                    Ben, have you got a question you want to

 9   ask?  I'll include you, too, add you to the list.

10                    No questions?  I have one more, but I'll let

11   you go first.

12                    MR. SHUMATE:  I do have one, Your Honor.

13   Okay.  So my question is to the government.

14                    Do you concede that if the Court finds that

15   Allstates is not challenging the validity of any standard

16   under Section 655(f) that the Court has jurisdiction under

17   Section 1331?

18                    MR. AVALLONE:  Your Honor, I think we made

19   clear that, yes.

20                    THE COURT:  Yes.

21                    MR. AVALLONE:  We agree.  If it's within the

22   text, this Court does not have jurisdiction, outside the

23   text, does not have jurisdiction.

24                    Do you have any other questions?

25                    MR. SHUMATE:  I didn't know I could ask more
```

```
 1   than one.
 2                THE COURT:  Don't get carried away, guys.
 3                MR. AVALLONE:  The question that I had was,
 4   and this is for plaintiffs.  If the Court enters the
 5   injunction that you have requested, is there any OSHA power
 6   unrelated to the power to promulgate or enforce safety
 7   standards that would be enjoined?
 8                MR. SHUMATE:  Can you repeat the question?
 9                MR. AVALLONE:  Sure.  If --
10                THE COURT:  If the Court enters the
11   injunction that you have requested, is there any OSHA power
12   unrelated to the power to promulgate or enforce safety
13   standards that would be enjoined?
14                MR. SHUMATE:  Yes.  If the Court were to
15   enter the injunction that we've asked for, OSHA could not
16   promulgate new standards pursuant to Section 6(b) of the
17   OSH Act, and OSHA could not take future enforcement action
18   against Allstates and other employers for violating OSHA's
19   standards promulgated pursuant to 6(b), because we've asked
20   for an injunction of Sections 5 and 17 that would relieve
21   Allstates of having to comply with those standards and it
22   facing the penalty.  So OSHA couldn't promulgate new ones
23   and they couldn't penalize Allstates for violating old
24   ones.
25                THE COURT:  And it would be limited to 6(b).
```

 1                  MR. SHUMATE:  Correct, Your Honor.

 2                  THE COURT:  Meaning, what would be left?

 3     Continuing that question, what's left for OSHA to do?

 4                  MR. SHUMATE:  So there is a lot.  According

 5     to our research, OSHA has only used 6(b) approximately a

 6     dozen times.

 7                  THE COURT:  Right.

 8                  MR. SHUMATE:  And I'm happy to point to

 9     where those are in our complaint, but most of OSHA's safety

10     standards are national consensus standards under I think

11     65(a), those would be unaffected.  Only the handful of 6(b)

12     standards that we've identified would be affected by what

13     we've requested.  Nor would any health standards under

14     (b)(5).  So, for example, carcinogens, things like that.

15                  THE COURT:  So 6(b) is not an often used

16     section by OSHA.

17                  MR. SHUMATE:  That's correct.

18                  THE COURT:  So injunction, arguably,

19     wouldn't have a significant impact.

20                  MR. SHUMATE:  It would have a significant

21     impact on Allstates, for sure, but it would not completely

22     gut OSHA's regulatory authority, no.

23                  THE COURT:  Do you find something

24     inconsistent about the request or the scope, rather, I

25     should say, of such an injunction?

1          MR. AVALLONE:  Well, Your Honor, I think

2   that the scope of the injunction is a telltale sign that

3   they are challenging the validity of standards because all

4   of the -- what they are seeking to enjoin relates back to

5   either the power to promulgate standards or the power to

6   enforce standards.

7          THE COURT:  Does the plaintiff have to prove

8   irreparable harm to get an injunction, and have they done

9   so here?

10          MR. AVALLONE:  To -- so I think in order to

11   get an injunction --

12          THE COURT:  Asking for an injunctive relief.

13          MR. AVALLONE:  Yes.

14          THE COURT:  Is irreparable harm a factor?

15          MR. AVALLONE:  Irreparable harm is a factor,

16   Your Honor, and here, that they have -- we have not

17   contested that they have shown the harm from compliance as

18   a harm that cannot be remedied at law.

19          THE COURT:  Okay.

20          MR. SHUMATE:  Yes, Your Honor.  In our

21   summary judgment motion, we briefed the elements of an

22   injunction and we have explained Allstates is facing

23   irreparable harm and I don't think the government responded

24   to that.

25          THE COURT:  I don't think the government is

1    contesting that factor.

2                    MR. AVALLONE:  Correct, Your Honor.

3                    THE COURT:  Okay.  Thank you all very much.

4    This has been helpful.  I appreciate your time today.  And

5    we will turn to this -- I'm not going to give you a promise

6    date other than to tell you we will turn to it promptly.

7                    Thank you very much.  We are adjourned.

8                    MR. AVALLONE:  Thank you very much.

9                    MR. SHUMATE:  Thank you, Your Honor.

10               (Proceedings adjourned at 11:29 a.m.)

11                            - - -

12

13                  **C E R T I F I C A T E**

14

15                    I, the undersigned, hereby certify
           that the above and foregoing is a true
16         and accurate record of the proceedings
           held in the above-entitled matter prepared
17         from my stenotype notes.

18
           /s/ Diana M. Ziegelhofer_____9/28/2022__
19         Diana M. Ziegelhofer, RPR, RCR
           Official Court Reporter
20         United States District Court
           1716 Spielbusch Avenue, Suite 118
21         Toledo, Ohio 43604
           419-213-5538

22

23

24

25